**William A. HADDAD and Ramona S. Haddad, Petitioners,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 99–4016.

United States Court of Appeals, Sixth Circuit.

March 22, 2001.

Before BATCHELDER and CLAY, Circuit Judges; and POLSTER, District Judge.*

## OPINION

POLSTER, District Judge.

Plaintiff–Appellant William A. Haddad seeks reversal of the decision of the Board of Immigration Appeals (the "Board") affirming the final order of deportation issued by the Immigration Judge. For the reasons set forth below, we AFFIRM the Board's decision.

## I. Background

William A. Haddad, a native and citizen of Jordan, entered the United States on November 2, 1990 as a nonimmigrant visitor with authorization to remain until May 1, 1991.[1] He remained in this country beyond that date without authorization from the Immigration and Naturalization Service ("INS").

---

* The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Mr. Haddad's application to adjust status lists his date of entry to the United States as October 21, 1990, a discrepancy that is of no material consequence to this action.

On September 12, 1991, Haddad married Krystyn Ann White, a United States citizen. Based on this marriage, Ms. White filed an INS Form I–130 Immigration Petition for Relative, on Haddad's behalf. The I–130 petition is used by U.S. citizens to request priority in the visa application process for their immediate relatives. Approval of the I–130 is a prerequisite to the alien relative's application for permanent residence based upon, in this case, marriage to a U.S. citizen. Haddad filed an INS Form I–485 application for adjustment of immigration status on his own behalf.

On July 1, 1992, Ms. White filed a complaint for annulment in the Circuit Court of Oakland County, Michigan. Declaring the marriage invalid, the Circuit Court granted the annulment petition on September 11, 1992. The court found that the parties did not consummate the marriage, and that Mr. Haddad induced the union by falsely and purposefully misrepresenting his intentions "in that he appear[ed] never to have had the intention to live with [White] as husband and wife." On November 5, 1993, the INS denied the Form I–130 visa petition on the ground that Haddad's marriage "was a sham from its inception . . ." The INS then denied Haddad's application for adjustment of status.

On November 16, 1993, the INS issued an Order to Show Cause charging Mr. Haddad with deportability and ordering him to appear before an Immigration Judge to show cause why he should not be deported for remaining in the United States without authorization. More specifically, the Order charged that Haddad was subject to deportation pursuant to the Immigration and Nationality Act ("INA" or

"the Act") § 241(a)(1)(B), as amended, "in that after admission as a nonimmigrant under section 101(a)(15) of the Act, [he] remained in the United States for a time longer than permitted." However, the Order did not specify a hearing date and the record indicates that the INS did not serve Haddad with the show cause order until May 25, 1995.

While the deportation proceeding was pending, Haddad married Ramona Saman Samara,[2] a naturalized United States citizen. Ramona Haddad filed a Form I–130 visa petition on Mr. Haddad's behalf on June 12, 1996. The petition was approved by the INS on August 23, 1996.

In a November 1996 deportation proceeding, Haddad informed the Immigration Judge that his wife's I–130 visa petition had been approved, and that he would be applying for adjustment of his immigration status. An issue arose as to whether the parties should remand the proceeding to the INS district director to decide the adjustment application. The Immigration Judge continued the deportation proceeding to April 16, 1997 to allow the parties time to decide this issue.

At the April 16, 1997 proceeding, counsel informed the Immigration Judge of the parties' inability to agree on remand, after which the INS expressed its intent to revoke approval of Mrs. Haddad's I–130 petition. The Immigration Judge scheduled a hearing for June 3, 1997 to adjudicate Haddad's adjustment application.

The INS thereafter formally notified Mrs. Haddad of its intent to revoke her I–130 petition, under 8 C.F.R. § 204.2(a)(ii), based on Mr. Haddad's prior fraudulent marriage.[3] Mrs. Haddad responded by

---

**2.** The court notes a discrepancy between the way Mrs. Haddad's name is spelled in the case caption ("Ramona") and the way it is spelled in all the documents she and her husband filed themselves ("Remona"). For the sake of consistency, the court will spell her first name the way it appears in the caption.

**3.** This section provides:

submitting records to verify the legitimacy of her current marriage to Mr. Haddad, but submitted no information contesting the INS's characterization of Mr. Haddad's first marriage as fraudulent. On May 27, 1997, the INS revoked the I–130 petition on the basis of "a review of the record, a sworn statement from Krystyn White, and the Service's investigation of the first marriage."

At the June 3, 1997 hearing, the parties informed the Immigration Judge of the revocation of Mrs. Haddad's I–130 petition. As a result of this revocation, the INS argued, the Immigration Judge was divested of jurisdiction to hear the case involving Mr. Haddad's application for adjustment of status. The Immigration Judge agreed. He asked if Mr. Haddad admitted the allegations in the original show cause order, i.e., having remained in the United States without authority, in the following colloquy between the judge and Mr. Haddad's counsel:

A. Does your client admit to the allegations contained in the Order to Show Cause?

Q. The allegations are admitted, your Honor.

A. Okay. And the concession made as well to the deportability based on—

Q. Deportability is conceded.

A. Having remained without authority? That's—that's the concession, correct?

Q. Correct.

*Joint Appendix at 84.* The Immigration Judge concluded:

> *Fraudulent marriage prohibition.* Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of

Based on the admission of the—and the concessions of the respondent in this matter. and having reviewed the decision of the Service revoking the petition that was filed on behalf of William Haddad, I have—I find I have no jurisdiction to entertain this application for adjustment. And with no other applications before the Court, then, and based on his admissions, I find that he is deportable.

*Id. at 88–89.* The judge entered an order granting Mr. Haddad voluntary departure by September 2, 1997, with an order of deportation to Jordan in the alternative.

The Haddads appealed this disposition to the Board, arguing that (1) the Immigration Judge erred in failing to adjudicate the visa petition which had been revoked by the Service after unexcused delay, and (2) the INS's revocation of the approved visa petition violated Mr. Haddad's constitutional due process rights. In a per curiam decision dated July 22, 1999, the Board ruled that the INS has the sole discretion to decide visa petitions; thus, neither the alleged delay in the INS's revocation of the I–130 petition nor the filing of an adjustment application by Mr. Haddad created jurisdiction in the Immigration Judge. The Board also noted that the INA expressly permits the Attorney General to revoke approval of an I–130 petition at any time, and the Board cannot rule on the constitutionality of laws passed by Congress but can only assure compliance with those laws. Accordingly, the Board concluded that the INS complied with the statutory notice requirements.

> such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy. Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file.
>
> 8 C.F.R. § 204(a)(ii).

Having affirmed the underlying decision, the Board then granted Mr. Haddad voluntary departure within thirty days with an order of deportation to Jordan in the alternative.

In a second per curiam order dated July 22, 1999, the Board denied Mrs. Haddad's motion to reconsider a March 16, 1998 order in which the Board dismissed Mr. Haddad's appeal of the I–130 petition proceedings. In the underlying decision, the Board held that it lacked jurisdiction to review the case because Mr. Haddad, as the beneficiary of the petition, improperly brought the appeal rather than Mrs. Haddad who filed it. On reconsideration, the Board adhered to its position that it lacked jurisdiction, rejecting arguments that "various mistakes and erroneous assumptions made by counsel led to counsel's failure to submit the prescribed forms ... which would have created ... jurisdiction in this case."

On August 19, 1999, the Haddads timely filed a petition for review of the Board's decisions dismissing Haddad's appeal from the decision of the Immigration Judge and Mrs. Haddad's appeal from the INS decision dated May 27, 1997 (the revocation of her I–130 petition). Mr. Haddad simultaneously moved this court for a stay of deportation. By order dated September 30, 1999, a panel of this court denied Mr. Haddad's motion for stay.[4]

After the INS filed the administrative record with the court, the Haddads moved for an order to produce the administrative record related to the I–130 petition revocation proceedings. Although the INS conceded that the court had jurisdiction to review the final order of deportation entered against Haddad, it opposed the requested production and, in turn, moved to dismiss that part of the appeal seeking review of the I–130 revocation. By order dated December 20, 1999, another panel of the court denied the Haddads' request on the basis that decisions on collateral issues not made within a deportation proceeding, such as the denial of a visa petition, are not reviewable by this court. The panel simultaneously granted the INS's motion for partial dismissal of the petition insofar as it sought review of the Board's order in the visa revocation proceedings. Consequently, the only possible issue for resolution by the court today is whether the Board properly upheld the final order of deportation.

We conclude that it did. The Immigration Judge determined that Mr. Haddad was deportable based on his admission that he stayed in the United States without authorization. The Haddads did not appeal this particular decision to the Board. Rather, their arguments revolved solely around the revocation of the visa petition. When the Board rejected their arguments, it had no alternative but to affirm the Immigration Judge's conclusion that Mr. Haddad was deportable, again, based on his admission. Although the INS conceded that this court had jurisdiction to review the final order of deportation, the Haddads made no argument that the Board's affirmance of the final deportation order lacked substantial evidence. *Klawitter v. I.N.S.*, 970 F.2d 149, 152 (6th Cir. 1992); *Gonzalez v. I.N.S.*, 77 F.3d 1015, 1021 (7th Cir.1996). Regardless, such an argument would have been futile because the only evidence on record is Mr. Haddad's admission in open court that he is deportable.

---

4. The panel noted that, under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009, § 309(c)(4)(F), a petition for review of the Board's decision does not automatically operate as a stay of deportation. Under the appropriate standard of review, the panel concluded that Mr. Haddad had failed to make a sufficient showing of the probability of success on the merits to support a stay.

This having been said, the Court is troubled by the failure of the INS to move expeditiously in locating Mr. Haddad after the show cause order was issued in 1993, followed by the inexplicable breakdown in communications within the INS that led to the initial approval in 1996 of Mrs. Haddad's I–130 visa petition. Eight months later, the INS revoked approval, based on its finding nearly four years earlier that Mr. Haddad's first marriage was a sham. The result is that we find ourselves ordering in 2001 a deportation that should have taken place in 1994—with unfortunate collateral consequences for Mrs. Ramona Haddad and the Haddads' young children.

Notwithstanding, the Board's final order of deportation must be, and hereby is, AFFIRMED.