**Pedrito UBIERA, Plaintiff,**

v.

**Griffin B. BELL, Attorney General of the United States, Leonel J. Castillo, Commissioner of the Immigration and Naturalization Service, Maurice Kiley, New York District Director of the Immigration and Naturalization Service, Cyrus Vance, Secretary of State of the United States, and Willard T. Devlin, United States Consul General to the Dominican Republic, Defendants.**

No. 77 Civ. 3820.

United States District Court,
S. D. New York.

May 26, 1978.

**182**

Brooklyn Legal Services Corp. "B" by Lloyd Constantine, John C. Gray, Jr., Brooklyn, N. Y., for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City by Robert S. Groban, Jr., Asst. U. S. Atty., New York City, for defendants.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Pedrito Ubiera is a native of the Dominican Republic. On November 20, 1970, he married Anna Rodriquez, a permanent resident alien of the United States. On the basis of this marriage, he obtained an immigrant visa to the United States as a second preference immigrant under Section 203(a)(2) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1153(a)(2). On August 30, 1972 he travelled to the United States and was admitted for permanent residence. Less than two years later, on June 6, 1973, the marriage was judicially terminated. Thereafter, on July 7, 1973, plaintiff married his present wife in the Dominican Republic and then adopted her son. His wife and son have remained in the Dominican Republic since that time.

In August, 1973, plaintiff petitioned the Immigration and Naturalization Service ("Service") to classify his new wife and son as his wife and son for immigration purposes so that they could enter the United States, as he had done, as second preference

immigrants under Section 203(a)(2) of the Act. The Service approved this preference petition and its approval was forwarded to the United States Consul in Santo Domingo, Dominican Republic.

Thereafter, on February 5, 1976, plaintiff's wife and child filed applications for second preference immigrant visas with the Consul in Santo Domingo. The Consul deferred final action on the application pending the results of an investigation which he requested the Service to conduct in regard to a possible violation by plaintiff of Section 241(c) of the Act, 8 U.S.C. § 1251(c). This section provides:

> An alien shall be deported as having procured a visa or other documentation by fraud . . . if (1) hereafter he or she obtains any entry into the United States with an immigrant visa . . . procured on the basis of a marriage entered into less than two years prior to such entry of the alien and which, within two years subsequent to any entry of the alien into the United States, shall be judicially . . . terminated, unless such alien shall establish to the satisfaction of the Attorney General that such marriage was not contracted for the purpose of evading any provisions of the immigration laws; . . .

Since plaintiff comes within subparagraph (1) of this section, he may be deportable thereunder. Because of the low priority assigned to this type of investigation, the Service has not yet concluded the requested investigation.

In his amended complaint, served on December 27, 1977, plaintiff seeks (i) a declaratory judgment that defendants may not deport plaintiff or rescind his permanent resident status, and (ii) an order directing the Consul (defendant Devlin) to issue immediately decisions on the visa applications of plaintiff's wife and son upon the basis that plaintiff's previous marriage and permanent resident status are valid for immigration purposes.

Plaintiff and defendants have each moved for summary judgment (Rule 56, F.R.Civ.P.).

■ In his motion, plaintiff asserts that there is a limitations period of five years in Section 246(a) of the Act,[1] 8 U.S.C. § 1256(a) and that this limitations period is applicable to plaintiff. The section is expressly applicable only to aliens who obtain their permanent residence under Section 245,[2] 8 U.S.C. § 1255, by adjustment of status. Plaintiff obtained his status as a permanent resident, not by such adjustment of status, but by immigrating from abroad in August, 1972. At that time, plaintiff as a native of a Western Hemisphere country was not eligible for adjustment of status pursuant to Section 245(c) of the Act, 8 U.S.C. § 1255(c) (a restriction which was eliminated from the Act in October, 1976). Nevertheless, plaintiff claims that the equal protection principles inherent in the Fifth Amendment require that the five-year limitation period in Section 246(a) must be applied to aliens like himself who obtained by immigration a permanent resident status no different from that obtained by adjustment of status under Section 245. Therefore, plaintiff contends, he is no longer subject to deportation under Section 241(c), more than five years having elapsed since his entry in August, 1972. Accordingly, he seeks the relief sought in his amended complaint as described above.

---

1. . . . If, at any time within five years after the status of a person has been [otherwise] adjusted under the provisions of Section [245 or 249] of this [Act] or [any other provision of law] to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall [rescind] the action taken granting an adjustment of status to such person and can-

celling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made. Immigration and Nationality Act, Pub.L. No. 414, § 246(a), 66 Stat. 218 (1952).

2. It also relates to Section 249 of the Act, 8 U.S.C. § 1259 (entry prior to June 30, 1948), which is not pertinent here.

184

Defendants make two contentions:

1. The Court lacks subject-matter jurisdiction to consider plaintiff's application for relief to the extent it concerns the Consular visa issuance process.

2. Plaintiff's Fifth Amendment claim does not present a justiciable controversy and fails to state a claim upon which relief may be granted.

## SUBJECT–MATTER JURISDICTION:

■ In a recent decision, *Hsieh v. Kiley,* 569 F.2d 1179, 1181 (2d Cir. 1978), the Court of Appeals held:

The district court correctly held that no jurisdictional basis exists for review of the action of the American Consul in Taiwan suspending or denying the issuance of immigration visas to appellant's children there. It is settled that the judiciary will not interfere with the visa-issuing process. *Gomez v. Kissinger,* 534 F.2d 518 (2d Cir. 1976); *Pena v. Kissinger,* 409 F.Supp. 1182, 1185–88 (S.D.N.Y. 1976). In *Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972), the Supreme Court stated the basic principle:

" 'The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.' "

The jurisdiction of federal courts to review the INS's action in conducting or completing an investigation requested by some other branch of the government, such as the State Department, would similarly depend on the existence of a statutory authorization or mandate from Congress. No such authorization is shown or appears to exist.

We think *Hsieh* is dispositive of the jurisdictional question here. Moreover, even if we were to conclude that the equal protection claim is meritorious, our decision would not be binding on the Consul, as indicated by the quotation from *Kleindienst v. Mandel* above.

*Fiallo v. Levi,* 406 F.Supp. 162 (E.D.N.Y. 1975), aff'd sub nom. *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), a case which involved preference petitions, is not to the contrary. *See Hsieh v. Kiley, supra,* where the Court carefully distinguished between the duty of the Service to determine a petition for preference status and the absence of any duty of the Service to conduct an investigation in connection with the visa issuance process, as is involved here.

■ Plaintiff contends that the relief he seeks does not interfere with the visa issuance process, since he does not seek review of anything the Consul has done. Rather, he asks that the Court direct the Consul to exercise his discretion in light of our declaration as to plaintiff's status as a permanent resident. But we understand the law to be that any such judicial direction to the Consul is forbidden; and, moreover, even if such direction were given, the Consul's discretion would remain absolute. See Committee on the Judiciary's 1950 report on the proposed Immigration Act, S.Rep. No. 1515, 81st Cong. 2d Sess., 622 (1950). Nor does Section 279 of the Act, 8 U.S.C. § 1329, confer jurisdiction here; it applies only to the provisions of the second subchapter of the Act, and the steps in the visa issuance process with which we are concerned are pursuant to Section 104 of the Act, 8 U.S.C. § 1104, a provision in the first subchapter of the Act. *See Hsieh v. Kiley, supra,* at 1182. And even if it were concluded that we are here concerned with action pursuant to Section 221 of the Act, 8 U.S.C. § 1201, (in the second subchapter) which deals with the grant or denial of visas, we understand the cases and the legislative history to preclude any interference by the courts in the visa issuance process. For the same reasons, we also reject plaintiff's contention that there is jurisdiction under 28 U.S.C. § 1331.

■ We conclude therefore that we may take no action with respect to the Consul's decision to defer consideration of the visa

applications of plaintiff's family pending an investigation by the Service of plaintiff's status as a permanent resident.

## FIFTH AMENDMENT CLAIM:

Plaintiff asserts that his deportability under Section 241(c) results only from the happenstance that he obtained permanent residence as a result of immigration, rather than by adjustment of status under Section 245, in which event the five-year period in Section 246(a) would protect him from deportation. Therefore, he contends the Fifth Amendment requires that the five-year limitation must be applied to his case. It follows, he further contends, that he has standing and there is a justiciable controversy.

His status as a permanent resident by way of immigration, however, resulted not from chance but from the fact that adjustment of status was not available to him in 1972 (Section 245(c) as then in effect).[3] Moreover, there is no certainty at this time that the Government will take any action to deport plaintiff or to deny visas to plaintiff's family. And, as indicated above, even if plaintiff were to prevail on his Constitutional claim, the action of the Consul would still remain solely within the latter's discretion. We think, therefore, that it is at least doubtful that plaintiff has shown the requisite personal stake which is required for standing. *See Sierra Club v. Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

■ In any event, we think plaintiff has failed to present a justiciable controversy, which is ripe for decision. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1966); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The Service has interpreted Section 246(a), which provides only for recission of status but not for deportation, as not pre-

cluding deportation of any alien with five or more years residence, however permanent resident status was obtained. *Matter of S.*, 9 I&NS Dec. 548, 553 (1962). Thus, plaintiff may be subject to deportation proceedings even if the five-year limitation in Section 246(a) is applied to him. In seeking a declaratory judgment that there is a five-year statute of limitations on deportation and that it is applicable to him, plaintiff asks us to grant relief which neither the Service, the Attorney General (*see Matter of S., supra*), nor Congress has been willing to provide. *See* S.Rep. 1515, 81st Cong. 2d Sess., 289 (1950);[4] 38 Cong.Rec. 5159 (1952) (Remarks of Senator Benton); 98 Cong.Rec. 4433–34 (rejection of proposed amendment to the Act to add a five-year statute of limitations for deportable aliens). *See also* Gordon and Rosenfeld, *Immigration Law and Procedure*, Section 4.6(b). Since there is only a possibility that the Service may ever seek to deport plaintiff, a possibility which presently exists as to any other alien admitted to permanent residence, and since plaintiff would have a full opportunity to litigate his status in any deportation proceeding subject to judicial review (Sec. 242 of the Act, 8 U.S.C. § 1252), we think plaintiff has not here presented a controversy appropriate or ripe for judicial scrutiny.

■ Finally, we agree with defendants that plaintiff has failed to state a claim upon which relief can be granted. Plaintiff asserts that he is unable to live with his family in this country because it is unconstitutional not to give him the benefit of the five-year bar in Section 246(a). But he has no constitutional right as a resident alien to have his wife and child in this country. *Noel v. Chapman*, 508 F.2d 1023 (2d Cir. 1975). Moreover, the Service does not interpret and apply Section 246(a) to discriminate against aliens such as plaintiff who did not obtain permanent residency under Sec-

---

3. The constitutionality of this section was upheld in *Dunn v. I.N.S.*, 499 F.2d 856 (9th Cir. 1974), *cert. denied*, 419 U.S. 1106, 95 S.Ct. 776, 42 L.Ed.2d 801 (1975).

4. "It is the recommendation of the subcommittee that the time limitation on [an alien's] de-

portation should be eliminated. If the cause for exclusion existed at the time of entry, it is believed that such aliens are just as undesirable at any subsequent time as they are within the 5 years after entry."

tion 245 but by immigration from abroad. The Service, as indicated above, considers that all aliens, regardless of how they obtained status or the length of residence here, are subject to deportation at any time, *Matter of S., supra*, and the Attorney General's interpretation of Section 246(a) in that proceeding is consistent with the legislative history of the 1952 Immigration Act of which Sections 245 and 246 were a part.[5] In *Francis v. I.N.S.*, 532 F.2d 268 (2d Cir. 1976), the Court found a denial of equal protection resulting from a statutory interpretation by the Board of Immigration Appeals. The Court based its conclusion on the ground that aliens similarly situated were accorded different treatment unrelated to any legitimate governmental interest. Here, the Service interprets the statute in question in a manner which makes all aliens similarly situated subject to the same treatment, and its interpretation is fully supported by the Congressional history.

CONCLUSION:

We hold that plaintiff's prayer for relief with respect to the Consul is barred by the doctrine reaffirmed in *Hsieh v. Kiley, supra*, and that his Fifth Amendment claim has no merit. Plaintiff's motion for summary judgment is denied, defendants' motion to dismiss is granted and the complaint is dismissed.

SO ORDERED.

---

**5.** It appears that these sections were included in the Act to replace an old, cumbersome procedure known as pre-examination, and that the recission proceedings in Section 246 were developed to aid the Service in its administration of the Act and not as a means of placing any limits on the availability of deportation as a remedy in appropriate cases. *See* Gordon and Rosenfeld, *supra*, at Section 7.3a.