

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2008

# De Guzman v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3947

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"De Guzman v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1710.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1710

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 06-3947
_____

CRISOSTOMO MACARAEG DEGUZMAN,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES,

Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A72-747-583)
Immigration Judge Henry S. Dogin

_____

Argued January 7, 2008

Before: FUENTES and JORDAN, *Circuit Judges*
and O'NEILL*, *District Judge.*

(Filed: January 24, 2008 )

_____

_____

*Honorable Thomas N. O'Neill, Jr., United States District Court Judge for the Eastern
District of Pennsylvania, sitting by designation.

Raymond P. D'Uva   [ARGUED]
Law Offices of Raymond P. D'Uva
17 Academy Street - #1000
Newark, NJ 07102
        *Counsel for Petitioner*

Richard M. Evans
Paul Fiorino
Kohsei Ugumori  [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC   20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Petitioner, Crisostomo Macaraeg De Guzman, a native and citizen of the

Philippines, seeks review of a final order of removal issued against him by the Board of

Immigration Appeals ("BIA").  Because we conclude that the BIA did not err in affirming

the decision of the Immigration Judge ("IJ"), we will deny the petition for review.[1]

---

[1]We have jurisdiction to review the BIA's final decision pursuant to 8 U.S.C.
§ 1252(a)(1).  The Court's review of the BIA's legal determinations is *de novo*.  *Partyka
v. Attorney General*, 417 F.3d 408 (3d Cir. 2005).  In cases where the BIA adopts the IJ's
decision, we may review the IJ's opinion.  *Shah v. Attorney General*, 446 F.3d 429, 434
(3d Cir. 2006).  In reviewing factual findings, "[t]he Court will uphold the agency's
findings of fact to the extent that they are supported by reasonable, substantial, and
probative evidence on the record considered as a whole."  *Gao v. Ashcroft*, 299 F.3d 266,
272 (3d Cir. 2002) (internal quotation marks and citation omitted).

2

## I.      Background

De Guzman arrived in Newark, New Jersey on January 21, 1994 with his wife, Miriam Alcoy ("Miriam"), who had an H-1 visa, and he was admitted on January 24, 1994 as an H-4 nonimmigrant derivative.  On May 2, 1994, based on an approved visa petition filed by Miriam on his behalf, De Guzman's status was adjusted to permanent legal resident.  On June 21, 2004, however, the Department of Homeland Security (the "DHS") served De Guzman with a Notice to Appear in Removal Proceedings ("NTA"). He was charged with removability pursuant to § 237 a)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(A), for being inadmissible at the time of his entry and at the time of his adjustment of status under INA § 212(a), 8 U.S.C. § 1182(a), because:  (1) he allegedly did not possess a valid entry visa at the time of entry into the United States, INA § 212 (a)(6)(C)(I), 8 U.S.C. § 1182(a)(6)(C)(I) and (2) he allegedly committed fraud or willful misrepresentation of a material fact in seeking to procure a visa, other documentation, or other benefit provided under the INA in entering the United States, INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a(7)(A)(i)(I).

The removability charges stemmed from DHS's discovery that, prior to his marriage to Miriam in 1993, De Guzman was married to Helen Garrovillas ("Helen"). DHS asserts that De Guzman was still married to Helen when he married Miriam, and that he fraudulently concealed that fact in order to gain entry into the United States and adjustment of status through his marriage to Miriam.  At an August 29, 2005 hearing

before an IJ, De Guzman testified that he believed that his marriage to Helen had been legally terminated in 1991 due to her abandonment of him, causing him to believe that he could marry Miriam in 1993 without first securing a divorce or annulment to end his marriage to Helen. In 2003, De Guzman did obtain an annulment of his marriage to Helen.

De Guzman filed a motion to terminate the removal proceedings based upon DHS's failure to commence the proceedings within five years of his adjustment of status to permanent resident, pursuant to INA § 246, 8 U.S.C. § 1256. He also argued that the removal proceedings should be terminated because he had obtained an annulment of his first marriage, effectively negating that marriage's existence after the fact and rendering his 1993 marriage to Miriam valid. On March 1, 2005, the IJ denied De Guzman's motion to terminate.

De Guzman then filed an application for cancellation of removal, to be considered in conjunction with the removal proceedings, claiming that his removal to the Philippines would result in his U.S. citizen children experiencing exceptional and extremely unusual hardship. He alleged that both children have severe asthma, which requires medical care and the use of inhalers and other breathing devices. On August 29, 2005, the IJ denied De Guzman's application, finding that his children's asthma was not severe enough to constitute exceptional and extremely unusual hardship.

4

De Guzman appealed the IJ's decision to the BIA, and on August 2, 2006, the BIA adopted and affirmed both the decision to deny the motion to terminate removal and the decision to deny cancellation of removal. On August 31, 2006, De Guzman filed with the BIA a motion to reconsider. At the same time, he filed in this Court his petition for review of the BIA's decision.[2] We will deny the petition for review.

## II.     Discussion

### A.     De Guzman's Motion to Terminate the Removal Proceedings Pursuant to 8 U.S.C. § 1256(a)

De Guzman argues that, for two reasons, the IJ and BIA erred in denying his motion to terminate the removal proceedings. First, he asserts that the motion to terminate should have been granted because, contrary to INA § 246, 8 U.S.C. § 1256, the DHS failed to commence the removal proceedings within five years of his adjustment of status to permanent resident in 1994. Second, he maintains that the motion to terminate should have been granted because in 2003 he obtained an annulment of his first marriage, which voided that marriage from the beginning.

### 1.     Five-year limitations period.

With respect to DHS's failure to commence removal proceedings within five years of the adjustment of his status, De Guzman argues that, not only does INA § 246,

---

[2]The BIA denied De Guzman's motion to reconsider, and he has not petitioned for review of that decision.

8 U.S.C. § 1256,[3] expressly provide for a five-year time limit on removal proceedings, but our decision in *Bamidele v. INS*, 99 F.3d 557 (3d Cir. 1996), necessitates the imposition of the five-year limit. We disagree.

The express language of INA § 246 only provides for a five-year limitations period on rescission proceedings. *See Asika v. Ashcroft*, 362 F.3d 264, 267 (4th Cir. 2004) ("[O]n its own terms, section 246(a) discusses only the rescission of status adjustments and does not purport to limit the Attorney General's power of deportation."). The statute does not extend the limitations period to removal proceedings, which, generally speaking, can be instituted at any time. Contrary to De Guzman's argument, the second sentence of the statute does not show that an order of removal is equivalent to an order of rescission. The two proceedings are not equivalent, because rescission, unlike removal, corrects a mistaken grant of adjustment of status by returning an alien to his original status; once

---

[3]INA § 246, 8 U.S.C. § 1256, states:

> If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling removal in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made. Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien under section 1229a of this title, and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status.

returned to his original status, the alien can re-apply for adjustment of status. *See* 8 U.S.C. § 1256(a) (stating if mistake was made in adjusting status, Attorney General shall rescind action granting adjustment); *Asika*, 362 F.3d at 268 (holding Attorney General has power to rescind erroneously granted adjustments of status). As a legal consequence, an order of removal can result in a rescission of status, but that does not mean removal and rescission must be treated equivalently under the statute.

De Guzman's reliance on *Bamidele* is also misplaced because *Bamidele* is distinguishable on its facts. In *Bamidele*, the government became aware within five years of the alien's adjustment of status that the alien was actually ineligible for that adjustment. Despite knowing of that ineligibility, and knowing it within the limitations period, the government failed to take action for six years. In this case, by contrast, the government was unaware of De Guzman's alleged ineligibility to adjust status until almost ten years after he had been granted permanent residence status. Once it learned of the ineligibility, it moved to begin the removal proceedings. When an alien, like De Guzman, has concealed information from the government, he cannot properly ask us to treat the five-year time limit as a bar. Therefore, the IJ was correct in distinguishing *Bamidele* on the facts.

### 2. Effect of 2003 annulment on marriage to Miriam

De Guzman argues that the IJ erred in holding that the 2003 annulment of his marriage to Helen did not render his 1993 marriage to Miriam valid. He maintains that

7

the annulment erased any misrepresentation because it voided his marriage to Helen *ab initio*. In the event that we find that the annulment cannot be applied retroactively, Petitioner also argues that he did not have the requisite *mens rea* to commit fraud.

As noted by the IJ, Article 41 of the Family Code of the Philippines provides that "[a] marriage contracted by any person during subsistence of a previous marriage shall be null and void, unless before the celebration of the subsequent marriage, the prior spouse had been absent for four consecutive years and the spouse present has a well-founded belief that the absent spouse was already dead." (A.R. at 512.) Because De Guzman made no claim that he believed Helen was dead prior to his marrying Miriam, and he actually returned to the Philippines to annul his marriage to Helen in 2003, the IJ and BIA did not err in concluding that his marriage to Miriam was null and void at its inception. De Guzman's 2003 annulment did not remedy the misrepresentation that the IJ found he had made to the government, because the second marriage was never legal to begin with.

Furthermore, there is substantial evidence in the record to support the IJ's finding that De Guzman knowingly misrepresented to the government his marital status. Intent to deceive is not a necessary element of a violation of 8 U.S.C. § 1182(a)(6)(C)(I). Knowledge that a representation is false is alone sufficient to establish a violation. *Mwongera v. INS*, 187 F.3d 323, 330 (3d Cir. 1990). Because De Guzman knew that his marriage to Helen was neither annulled, nor ended in divorce prior to his marriage to Miriam, there is sufficient evidence to support the conclusion that he knew his marriage

8

to Miriam was null and void, and hence to conclude that his misrepresentation was deliberate and voluntary.

Finally, the IJ was correct in holding that, even if De Guzman's 2003 annulment voided his marriage to Helen *ab initio*, it did not change the fact that, at the time of his entry and of his adjustment of status, he was inadmissible. He had already misrepresented his marital status, and the misrepresentation did not evaporate when he later acquired an annulment.

**B.** **The Immigration Judge's Determination that Petitioner Failed to Establish that His Removal Would Result in Exceptional and Extremely Unusual Hardship to his Children**

De Guzman seeks review of the IJ's decision denying his application for cancellation of removal. He argues that the IJ's decision that his children's asthma was not severe enough to constitute exceptional and extremely unusual hardship was clearly erroneous and not based on substantial evidence, and he maintains that we have jurisdiction to review the IJ's decision on this point because it is a question of law.

We are not unsympathetic to De Guzman's assertions about his family circumstances. Nothing in our decision today should imply otherwise. Nevertheless, his argument runs afoul of our holding in *Mendez-Moranchel v. Ashcroft*, 338 F.3d 176, 178-79 (3d Cir. 2003), wherein we held that the determination of whether an applicant's children would suffer exceptional and extremely unusual hardship upon his removal is a

matter within the complete discretion of the Attorney General. Consequently, we lack jurisdiction to review this aspect of the IJ's decision.

## III.     Conclusion

For the reasons stated, we will deny the petition for review and affirm the BIA's order upholding the IJ's decision.