

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2009

# Garcia v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 07-2164

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Garcia v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1961.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1961

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2164

ROSALBA ROA GARCIA,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                    Respondent

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(BIA No. A74-872-805)

Argued July 24, 2008
Before:  McKEE, FUENTES, and WEIS, Circuit Judges.
(Filed: January 14, 2009)

OPINION

WEIS, Circuit Judge.

In this immigration case, the Department of Homeland Security[1] seeks to deport an alien based on misrepresentations she made in applying for an adjustment of status more than five years previously. We conclude that a subsequent amendment to the statute did not negate our earlier precedent that the government was required to rescind and begin deportation within five years. Accordingly, we will grant the petition for review.

Appellant Rosalba Roa Garcia is a native and citizen of the Dominican Republic. In 1996, when she was almost twenty-three years old, Garcia filed a Form I-485 application for adjustment to permanent resident status, asserting she was an unmarried adult child of Dinora Altagracia Landestoy, a United States citizen. At the time she filed the application, Garcia knew that Landestoy was not her biological or legal mother. In September 1996, immigration authorities approved the application and granted Garcia lawful permanent residence status.

Landestoy had filed multiple prior unsuccessful petitions on Garcia's behalf, including one in September 1993

[1] In 2003, the Immigration and Naturalization Service was abolished and its functions were transferred to the Department of Homeland Security. See Homeland Security Act, Pub. L. 107-296, 116 Stat. 2135 (2002). We will refer to the agency as the DHS.

that was approved in January 1994, but then rescinded in August 1995 after an investigation determined that Landestoy was not her mother.  The notice of intent to revoke that petition referred to an earlier application that was rescinded in 1988 on the same basis.  Landestoy filed another petition in 1995 that was denied in September 1996 because she did not prove that Garcia was her child.

Despite the multiple rejected applications, the DHS did not realize until 2004, when Garcia filed an application for naturalization, that she was ineligible for the adjustment of status she received in 1996.  In 2005, the DHS began removal proceedings charging Garcia with being removable under INA § 237(a)(1)(A), 8 U.S.C. §1227(a)(1)(A), because she was inadmissible at time of entry or adjustment of status under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182 212(a)(7)(A)(i)(I), as an alien not in possession of a valid immigrant visa or entry document, and under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who attempted to procure a visa, other documentation, or admission into the United States through fraud or willful misrepresentation of a material fact.

An immigration judge ordered Garcia removed on the charged grounds, and the BIA affirmed.  She has now petitioned this Court for review.  Garcia contends that the five-year limitation in INA §246(a), 8 U.S.C. § 1256(a), barred the DHS from commencing removal proceedings against her based on her fraudulent 1996 application.  She argues that Bamidele v. Immigration & Naturalization Service, 99 F.3d 557 (3d Cir. 1996), supports her position.

3

In Bamidele, this Court vacated a final order of deportation where an alien had obtained an adjustment of status through a sham marriage. Id. at 558. Although it discovered that Bamidele's marriage was a fraud, the DHS waited five years to begin deportation proceedings. Id. at 559.

We concluded, "the running of the limitation period bars the rescission of Bamidele's permanent resident status and, in the absence of the commission of any other offense, thereby bars initiation of deportation proceedings in this case." Id. at 563. We reasoned further that, "[i]t defies logic to say that facts known to the INS within five years of Bamidele's adjustment of status *and* which would form the basis of a rescission action (had the INS taken timely action) should also empower the INS to deport Bamidele." Id. at 564. Allowing deportation in such circumstances would "effectively read § 246(a) out of existence." Id. at 562.

When we decided Bamidele, § 246(a) read in pertinent part:

> "If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for

4

such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made."

8 U.S.C. § 1256(a) (1996), amended by 8 U.S.C. § 1256(a) (Supp. 1996).

After this Court decided Bamidele, Congress added the following language to the end of § 246(a) as part of an extensive revision of the immigration statute:[2]

"Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to

---

[2] Bamidele was decided on November 1, 1996. The amendment to § 1256(a) was enacted before that date, on Sept. 30, 1996, as § 378 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, -649, which had an effective date of April 1, 1997.

remove the alien under section 240 [, 8 U.S.C. § 1229a], and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status."

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 § 378(a), Pub. L. No. 104-208, 110 Stat. 3009-546, 649.

The BIA held in the case before us that Bamidele is not applicable because the amendment to § 246(a) separated rescission and removal proceedings so that the five-year limitation applies only to rescission. According to the BIA, when an adjustment to permanent lawful resident status is erroneously granted, the DHS has the choice of either instituting rescission proceedings if it catches its mistake within five years or commencing removal proceedings without being subject to any time limitation. In this case, the DHS argues that we should defer to the BIA's interpretation of the amendment rather than follow Bamidele.

We decided the matter of deference in Bamidele, explaining that § 246(a) is a statute of limitations, a subject that is not "within the particular expertise of the INS." Bamidele, 99 F.3d at 561. Therefore, we did not grant the agency's interpretation "any presumption of special expertise." Id. (quoting U.S. Dep't of Navy v. Fed. Labor Relations Auth., 840 F.2d 1131, 1134 (3d Cir. 1988)).

6

We are bound by precedential opinions of our Court unless they have been reversed by an en banc proceeding or have been adversely affected by an opinion of the Supreme Court. In re Cont'l Airlines, 134 F.3d 536, 542 (3d Cir. 1998). Because the amendment to § 246(a) is part of the same statute of limitations discussed in Bamidele, its holding applies and we will not defer to the agency's construction.

The DHS, however, also maintains that the amendment to § 246(a), has undermined Bamidele. In Bamidele, after analyzing the statutory language, we decided that the five-year limitation applied to both rescission and deportation actions that were taken to invalidate an adjustment of status that was erroneously granted to an ineligible alien. Bamidele, 99 F.3d at 563. The issue before us now is whether the statutory amendment that became effective post-Bamidele altered the primary holding in that case.

Our first step is to scrutinize the text of the amendment. It has two clear provisions:

(1) The Attorney General may remove an alien without taking steps to rescind an adjustment of status; and

(2) An order of removal by an immigration judge is sufficient to rescind the alien's status.

It is significant that the amendment does not invalidate nor modify nor refer in any respect to the statutory language "within five years" after the adjustment. The five-year text remains in the statute. Although the DHS would limit its

7

application to rescission only, removing any statute of limitations to removal under § 1256, we find no justification for such a restrictive application of the plain language of the statute.

The DHS argument is a repetition of what we rejected in Bamidele. We observed that the statute of limitations bar on deportation is narrow and quoted approvingly the BIA opinion In re Belenzo, 17 I. & N. Dec. 374 (1981), where the Board said that § 246(a)'s prohibition is effective "only where deportation is based on an attack on the adjustment itself." Bamidele, 99 F.3d at 564 (quoting Belenzo, 17 I. & N. Dec. at 380). Nothing in the amendment to § 246(a) undermines Bamidele's reasoning on that point.

The amendment still contemplates relief from deportation. If this result is anomalous, as the DHS appears to believe, Congress created the anomaly and is free to eliminate it.[3]

We are aware of Asika v. Ashcroft, 362 F.3d 264, 267 (4th Cir. 2004), a post-amendment case that disagreed with Bamidele and deferred to the DHS's interpretation of § 246(a).

---

[3] The five-year limitation in § 246(a) is not of recent vintage. Decades ago, in Quintana v. Holland, 255 F.2d 161 (3d Cir. 1958), a case involving a predecessor statute, we observed that rescission of status was "pretty harsh" and Congress meant to require the Attorney General to take the required action within five years. Id. at 164.

8

Respectfully, we cannot agree with our esteemed colleagues on the deference issue.[4]

We conclude that Bamidele retains its precedential authority and counsels us to grant the petition for review.[5]

## II.

The government also argues that pursuant to INA § 242(g), 8 U.S.C. § 1252(g), this Court lacks jurisdiction to entertain this action. Section 242(g) provides, "Except as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against

---

[4] In Bamidele, we also recognized our disagreement with a line of cases in the Ninth Circuit. Bamidele v. INS, 99 F.3d 557, 563, 563 n.8 (3d Cir. 1996). The amendment to § 246(a) has not changed our view of those cases.

[5] At oral argument, the government argued that its position is supported by some language in one of our non-precedential opinions. We are not bound by our non-precedential opinions. See United States v. Corley, 500 F.3d 210, 226 (3d Cir. 2007); see also Third Circuit Internal Operating Procedure 5.7 (indicating that non-precedential "opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing").

9

any alien under this Act." 8 U.S.C. § 1252(g). The government argues that this section applies to bar jurisdiction here because Garcia is raising the five-year limit to challenge the decision to "commence" removal proceedings.

In Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471 (1999), the Supreme Court rejected "the unexamined assumption that § 1252(g) covers the universe of deportation claims -- that it is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'" Id. at 482. The Court held that section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" Id.; see also id. at 483 (Section 1252(g) "performs the function of categorically excluding from *non-final-order* judicial review . . . certain specified decisions and actions of the INS." (Emphasis added)).

Despite its apparent broad reach, therefore, § 242(g) "is to be read narrowly and precisely" to prevent review only of the three narrow discretionary decisions or actions referred to in the statute. Sabhari v. Reno, 197 F.3d 938, 942 (8th Cir 1999); see also Fornalik v. Perryman, 223 F.3d 523, 531 (7th Cir. 2000). Thus, the section "has nothing to do with petitions for review of final orders of deportation, or indeed with any sort of review of such orders." Shah v. Reno, 184 F.3d 719, 722 (8th Cir. 1999).

Garcia is not challenging the discretionary *decision* to commence proceedings, but is challenging the

10

government's very *authority* to commence those proceedings after the limitation period has expired. Thus, § 242(g) is not implicated, and we have jurisdiction to review the BIA's decision as a final order pursuant to § 242(a)(1), 8 U.S.C. § 1252(a)(1).

Accordingly, we will grant Garcia's petition for review, vacate the BIA's decision, and remand for further proceedings.

FUENTES, J., *dissenting:*

In 1996 Rosalba Garcia was granted permanent residency, based in part on a sworn statement falsely claiming that Dinorah Landestoy, a U.S. citizen, was her mother. Landestoy was, in fact, her aunt. Eight years later, DHS learned of the deception and, determining Garcia was never lawfully admitted, commenced removal proceedings. The majority reasons that, despite her false statement, Garcia cannot be removed because more than five years have passed since her fraud occurred. However, I believe that under a plain reading of § 246(a), Garcia is removable because § 246(a)'s five-year period applies only to rescissions and not to removal actions. Notably, that was the opinion of the Fourth Circuit in Asika v. Ashcroft, 362 F.3d 264 (4th Cir. 2004), the only other circuit court case to address this provision since its amendment in 1996. Moreover, I believe that Bamidele, upon which the majority relies, does not apply to Garcia's removal proceeding and is no longer binding in light of the 1996 amendment. Therefore, I respectfully disagree.

**I.**

By its own terms, § 246(a) expressly applies its five-year time limitation only to when the "Attorney General shall rescind" the adjustment action. 8 U.S.C. § 1256(a) (emphasis added). As the Fourth Circuit explained in Asika, "Section 246(a) itself gives no indication that its five-year limitation restrains the Attorney General's deportation authority, and the provisions of the Act that govern deportation refer neither to section 246 nor the statute of limitations that it

12

purportedly creates, nor, for that matter, to any time limitation on deportation at all." 362 F.3d at 269.

This, I believe, is the more appropriate plain reading of § 246(a). Reinforcing this construction is the fact that the public laws enacting and amending this provision respectively describe its subject as "<u>Rescission</u> of adjustment of status," Pub. L. No. 82-414, 66 Stat. 164, 217 (1952) (emphasis added), and "<u>Rescission</u> of lawful permanent resident status." Pub. L. No. 104-208, 110 Stat. 3009-619, 3009-649 (1996) (emphasis added); <u>see also</u> H.R. Rep. No. 82-1365, at 63 (1952) (describing section's effects and making no mention of removal).

The 1996 amendment of § 246(a) confirms that the five-year bar is meant to apply only to rescission proceedings. The sentence added to the provision in 1996 reads, "Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien under section 1229a of this title, and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status." 8 U.S.C. § 1256(a). This amendment shows that rescission proceedings, to which the five-year limitation period applies, have no bearing on the Attorney General's authority to commence a removal action. Thus, when DHS learned that Garcia was never lawfully admitted, based on her fraudulent statement, the government could properly commence removal proceedings even though more than five years had passed since she was granted permanent residency.

13

## II.

The majority's reliance on <u>Bamidele</u> in departing from this plain language is misplaced because the circumstances surrounding the removal here are quite different. In <u>Bamidele</u>, the government became aware of the alien's removability within five years of his adjustment of status yet failed to act. In this case, the government did not realize Garcia had made a misrepresentation until that five year window had expired.[6] To

---

[6] It is true that Landestoy had filed three previous petitions in 1985, 1993, and 1995 seeking to have Garcia recognized as her daughter for immigration purposes, all of which did not succeed because Landestoy could not prove she was Garcia's mother. (<u>See</u> App. 30 (1985 petition); App. 35 (1993 petition); App. 42 (1995 petition).) The government's contention that it did not discern Garcia's fraud before she applied for naturalization because the earlier applications were filed under different names is not supported by the record. However, there is no evidence that DHS was aware that these petitions applied to the same person. This seems simply to have been a case of the right hand not knowing what the left hand was doing, as evidenced by the fact that DHS allowed Landestoy to file the 1996 petition while the 1995 petition was still pending, and approved the former on September 19, 1996 just a week before denying the latter on September 26, 1996.

14

deny removal in this case would reward Garcia for the successful concealment of her fraud.[7]

Furthermore, we have the authority to reevaluate the otherwise controlling interpretation of a statute where its language has subsequently been amended. See Reich v. D.M. Sabia Co., 90 F.3d 854, 858 (3d Cir. 1996). The 1996 amendment had been enacted, but was not yet effective when Bamidele was issued. Bamidele did not discuss the pending amendment. But even before the 1996 amendment, other courts applying § 246(a) were not tempted to expand its time limitation beyond the arena of rescission. See Choe v. Immigration & Naturalization Serv., 11 F.3d 925, 928 n.4 (9th Cir. 1993) ("The bottom line is § 246 does not prevent the removal of adjusted aliens."); Ubiera v. Bell, 463 F. Supp. 181, 185 (S.D.N.Y. 1978) ("[P]laintiff may be subject to deportation proceedings even if the five-year limitation in Section 246(a) is applied to him."). Bamidele's contrary holding rested on the rationale that, since the BIA conducts rescission and removal proceedings in the same way, it would be unreasonable for the statute to treat them differently. 99 F.3d at 564-65. However, the 1996 amendment, which was not discussed in Bamidele, indicates that Congress does not view rescission and removal as equivalents. As the Fourth Circuit noted in Asika v. Ashcroft, the Immigration and Nationality Act ("INA") guarantees certain procedural safeguards for removal proceedings that are not put in place for

---

[7] A non-precedential opinion of this court, De Guzman v. Attorney General, 263 F. App'x 222 (3d Cir. 2008), distinguished Bamidele on similar grounds.

15

rescissions. See 362 F.3d at 270 (comparing 8 U.S.C. §§ 1229a, 1256). Congress's grant of permission to substitute a removal proceeding for removal and rescission suggests that the more extensive procedural protections associated with removal render the less formal step of rescission unnecessary. Although currently the two types of proceedings are conducted almost identically, that approach is at the discretion of DHS, and therefore would leave a role for § 246(a) should the agency revert to the disparate procedures permitted by the INA. Id. at 270 & n.7; In re S—, 9 I. & N. Dec. 548, 555 n.8 (Att'y Gen. 1962).

Our adherence to the interpretation in Bamidele has placed us out of step with every other circuit to address § 246(a), both before and after the 1996 amendment. As noted above, we are the only circuit to interpret § 246(a) to apply to removal proceedings before the 1996 amendment. Since then, the Fourth Circuit has rejected Bamidele outright in Asika. The Eleventh Circuit has also implicitly endorsed removal actions occurring outside the five-year window in Savoury v. Attorney General, 449 F.3d 1307 (11th Cir. 2006), stating: "What § 246(a) does is establish a five-year statute of limitations for the Attorney General to bring rescission proceedings and further clarifies that an [immigration judge's] order of removal may also act as a rescission of status even if it is issued after that five year period." Id. at 1314 n.2 (emphasis added).

The majority contends that if its interpretation of § 246(a) creates an anomaly in the application of the INA, Congress is free to eliminate that anomaly. However, that argument fails to consider the history of this statute. At the time

16

that Congress amended the INA, those authorities that had addressed the scope of § 246(a) had held it to govern only rescissions, not removals. <u>See, e.g.</u>, <u>Oloteo v. Immigration & Naturalization Serv.</u>, 643 F.2d 679 (9th Cir. 1981); <u>Ubiera v. Bell</u>, 463 F. Supp. 181, 185 (S.D.N.Y. 1978); <u>In re S—</u>, 9 I. & N. Dec. 548 (Att'y Gen. 1962). Under the majority's logic, if that opposing interpretation were anomalous, the legislature would have addressed it in 1996. <u>Compare</u> <u>Oloteo</u>, 643 F.2d at 683 ("The argument that our interpretation of § 246(a) renders it without practical effect would best be made before Congress and the Attorney General."). Instead, Congress enacted an amendment that at the very least left the issue unclear, and that I believe indicates an understanding that § 246(a) applies only to rescission.

### III.

I do not rest my dissent on the position that we must grant <u>Chevron</u> deference to the BIA's construction of § 246(a), as I believe Congress's intent is clear on the face of the statute and "that is the end of the matter." <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842 (1984). However, it is in situations such as these that an agency's view of a statute it administers may be helpful to our interpretive task. As is evident from this Court's discussion in <u>Bamidele</u>, the application of the statute of limitations contained in § 246(a) requires consideration of matters well within the agency's expertise, including the correct value to place on the durability of an alien's permanent status, 99 F.3d at 564, and the difference between rescission and removal proceedings. <u>Id.</u> at 564-65; <u>see also</u> <u>Asika</u>, 362 F.3d at 271 n.8. The BIA's input is particularly

17

persuasive in that it is consistent with the statute's plain language. Compare Lynch v. Lyng, 872 F.2d 718, 724 (6th Cir. 1989) ("Here, where we find that the language of the statute, the broader purposes, and the legislative history argue against the Secretary's position, we are not compelled to defer to his interpretation."); Dion v. Sec'y of Health & Human Servs., 823 F.2d 669, 672-73 (1st Cir. 1987) (refusing to defer to agency interpretation where it was inconsistent with Congress's explicit and implicit intent); In re Oliver M. Elam, Jr., Co., 771 F.2d 174, 181 (6th Cir. 1985) (rejecting agency interpretation that has "no support in the plain language of" the relevant provision) (all cited by Bamidele in support of decision not to defer to the Attorney General's construction of § 246(a)).

Moreover, were we to view the BIA's decision through the lens of Chevron deference, Bamidele would clearly no longer be binding. In Bamidele itself, we stated that "We express no opinion as to whether . . . any other subsequent amendments to the Act would make someone in Bamidele's position deportable." 99 F.3d 557, 565 (3d Cir. 1996). Although the 1996 modification was not a drastic one, it offered a reasonable basis for the BIA to reject Bamidele as no longer applicable, and we should defer to that decision.

## IV.

In short, I believe the majority's decision strays impermissibly far from the language of § 246(a). The plain meaning of the statute is supported by logic, the view of other circuits, and the BIA's own reading. Further, I believe that Bamidele has lost its precedential value in light of the 1996

18

amendment of § 246(a)'s language. For these reasons, I respectfully dissent.