**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3553
_____

BILLA SINGH,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A070-888-807)
Immigration Judge:  Honorable Jesus Clemente
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 11, 2012

Before: SLOVITER, GREENAWAY, JR. and COWEN, Circuit Judges

(Opinion filed: July 25, 2012 )
_____

OPINION
_____

PER CURIAM

        Billa Singh petitions for review of a Board of Immigration Appeals (BIA) decision

that dismissed his appeal.  He argues that the BIA erred in sustaining his removal and

1

denying his application for cancellation of removal; that the Government impermissibly initiated removal proceedings after the expiration of the relevant statute of limitations; and that the agency denied him due process. For the following reasons, we disagree with Singh and will deny his petition for review.

I.

Singh is a native and citizen of India who entered the United States in 1992 and adjusted to lawful permanent resident (LPR) status in 2005. In or around 2004, FBI agents began to investigate a "credit card bust-out scheme," which allegedly began in 2001. Singh, who was implicated in the scheme, was arrested at JFK airport (where he was returning from abroad) in 2008. He was paroled into the United States for the purpose of prosecution.

The indictment charged Singh with one count of violating 18 U.S.C. § 1029(b)(2):

> [k]nowingly and with intent to defraud conspir[ing] to effect transactions with one or more access devices issued to another person or persons, to wit: credit cards, to receive payment and other things of value during a one-year period, the aggregate value of which was equal to or greater than $1,000, in a manner affecting interstate commerce, in violation of Title 18, United States Code, Section 1029(a)(5) .

Administrative Record (A.R.) 247. Overt acts included receiving approximately $11,000 in "proceeds of the conspiracy" from an associate. A.R. 247. Singh pleaded guilty and received a eighteen-month custodial sentence. A.R. 272–73.

In 2010, Singh was served with a Notice to Appear, which recited the above and charged him with inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(I), a statute rendering

2

inadmissible aliens who have been "convicted of, or who admit[] having committed, or who admit[] committing acts which constitute the essential elements of a crime involving moral turpitude . . . or an attempt or conspiracy to commit such a crime."1 Singh attempted to terminate removal proceedings by contesting the grounds for removal, and also applied for cancellation of removal under 8 U.S.C. § 1229b(a).

In an oral decision, the Immigration Judge (IJ) held that Singh's crime involved moral turpitude, thus satisfying the grounds of inadmissibility. A.R. 34–35. The IJ also determined that Singh was ineligible for cancellation of removal, because (inter alia) he was convicted of an offense qualifying as an aggravated felony under 8 U.S.C. § 1101(a)(43); his application was thus pretermitted and denied. A.R. 26, 40. On appeal, the BIA concluded that 1) Singh's crime was one involving moral turpitude; 2) Singh's offense was an aggravated felony, thus rendering him statutorily ineligible for cancellation of removal; and 3) the Government had not impermissibly commenced removal proceedings outside of the five-year limitations period of 8 U.S.C. § 1256(a). A.R. 4–5. Singh now seeks review of the BIA's decision.

II.

Because Singh was adjudged inadmissible for having committed a crime of moral

---

1 "Lawful permanent residents who have committed an offense under 8 U.S.C. § 1182(a)(2) are considered to be arriving aliens when they present themselves for admission into the United States." Mejia-Rodriguez v. Holder, 558 F.3d 46, 48 (1st Cir. 2009) (citations omitted).

turpitude, our jurisdiction is limited by 8 U.S.C. § 1252(a)(2)(C).  However, as this petition for review raises primarily questions of law, we retain jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to "review the [agency's] legal determinations de novo," subject to applicable canons of deference.  Santos-Reyes v. Att'y Gen., 660 F.3d 196, 199 (3d Cir. 2011); see also Denis v. Att'y Gen., 633 F.3d 201, 205 (3d Cir. 2011) (exercising review over aggravated felony determination); Mehboob v. Att'y Gen., 549 F.3d 272, 275 (3d Cir. 2008) (same, but for moral turpitude offense).  "Because the BIA rendered its own opinion regarding . . . removability under the [Immigration and Nationality Act], we review the decision of the BIA and not the IJ."  Totimeh v. Att'y Gen., 666 F.3d 109, 113 (3d Cir. 2012).  Our analysis is limited to the record compiled before, and rationale offered by, the BIA.  See Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir. 2004).

III.

a) Statute of Limitations

We begin by addressing Singh's claim that the removal proceedings were impermissible under 8 U.S.C. § 1256(a).[2]  He argues that the law of this Circuit—

---

[2] This provision reads, in pertinent part:

> "If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling removal in the case of

4

specifically, <u>Garcia v. Att'y Gen.</u>, 553 F.3d 724 (3d Cir. 2009) and <u>Bamidele v. INS</u>, 99 F.3d 557 (3d Cir. 1996)— "required the agency to initiate procedures to rescind [his] grant of permanent residence rather than place [him] into removal proceedings once it became aware that his alleged criminal conduct rendered him potentially ineligible to adjust his status." Pet'r's Br. 23. He notes that his status was conditionally adjusted in 2002, with conditions removed in 2005; and while the Government was aware of his criminal conduct in 2004, it did not seek to remove him until 2010.

The cases he cites, however, do not support his reading of the statute, which by its terms relates only to disputes arising from an adjustment of status. Indeed, we have explained that the statute of limitations bar on deportation is "narrow," applying only when the underlying removal is based on an attack on the adjustment itself. <u>Garcia</u>, 553 F.3d at 728 (quoting <u>Bamidele</u>, 99 F.3d at 564). A recent opinion, <u>Malik v. Attorney General</u>, 659 F.3d 253 (3d Cir. 2012), reaffirmed this crucial distinction. <u>Id.</u> at 257 (stressing that "the time bar in § 1256(a) applies to both rescission and removal proceedings initiated *based on* a fraudulent adjustment of status") (emphasis added).

---

such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made. Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien under section 1229a of this title . . . ."

8 U.S.C. § 1256(a). The final sentence was added in 1996. <u>See</u> Pub. L. No. 104-208, § 378(a), 110 Stat. 3009, 3009-649.

Here, Singh's removal was not based on questions arising from his earlier adjustment of status, but instead flowed from his conviction for a later criminal offense. As Singh's adjustment is not the focus of this action, § 1256(a) does not apply; hence, removal proceedings were properly commenced.3

b) Moral Turpitude

Describing the BIA's analysis as "strongly lacking," Singh maintains that the offense of conviction was not a crime of moral turpitude. See Pet'r's Br. 13–14. Thus, Singh argues, the agency's rationale for deeming him inadmissible was legally faulty.

The BIA has defined "moral turpitude" as "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general." Totimeh, 666 F.3d at 114 (citations omitted). Our own construction characterizes as turpitudenous conduct that entails "reprehensible act[s] with an appreciable level of consciousness or deliberation." Id. (citations omitted). Fraud is "universally recognized" as falling into the category of moral turpitude as

---

3 In his reply brief, Singh argues that Matter of Belenzo, 17 I. & N. Dec. 374 (B.I.A. 1980), which we cited in both Bamidele and Garcia, supports his interpretation of the statute, but he is mistaken. The BIA's opinion, which we found to be more convincing than the subsequent Attorney General opinion in the case, specifically noted that the grounds of deportability arising from that alien's reentry "all relate[d] to the claimed illegal procurement of adjustment. *This is to mask a rescission proceeding under the guise of a deportation proceeding.*" Id. at 380 (emphasis added). Singh's removal, by contrast, arises out of his criminal conviction and is not connected to his adjustment of status.

defined by 8 U.S.C. § 1182(a)(2).  See Doe v. Att'y Gen., 659 F.3d 266, 270 n.2 (3d Cir. 2011) (citing Jordan v. De George, 341 U.S. 223, 232 (1951)).

The record reveals that Singh was convicted of one count of conspiracy under 18 U.S.C. § 1029(b)(2), which criminalizes a conspiracy "to commit an offense under subsection (a) of this section."  Ordinarily, in determining whether a crime involves moral turpitude, we employ a "categorical approach" that focuses "on the underlying criminal statute rather than the alien's specific act."  Knapik v. Ashcroft, 384 F.3d 84, 88 (3d Cir. 2004) (internal quotations, citations omitted).  But when, as here, "a statute of conviction contains disjunctive elements, some of which are sufficient for conviction of the federal offense and others of which are not, we have departed from a strict categorical approach."  Jean-Louis v. Att'y Gen., 582 F.3d 462, 466 (3d Cir. 2009).  Employing a "modified" categorical approach, we attempt to "determine the least culpable conduct sufficient for conviction, and . . . measure that conduct for depravity."  Id.  In so doing, we may examine "the charging document, the plea agreement or transcript of the plea colloquy in which the defendant confirmed the factual basis for the plea, or a comparable judicial record of information."  Id. at 466 n.5.

Having examined the record, we conclude that the BIA correctly deemed Singh's offense to have involved moral turpitude.  Singh asserts that the indictment "ma[de] no reference to which of the sub-provisions of [8 U.S.C. § 1029(a)] served as the basis for [the prosecution]," Pet'r's Br. 13, but he is incorrect; the indictment clearly charged a

7

conspiratorial violation of subsection (a)(5), which prohibits "knowingly and *with intent to defraud* effect[ing] transactions, with 1 or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period" (emphasis added).  Because the convicting court must have found both fraudulent intent and a knowing state of mind in order to support the conviction, under the modified categorical approach Singh's offense necessarily included moral turpitude.4  See Knapik, 384 F.3d at 88; see also Hyder v. Keisler, 506 F.3d 388, 392 (5th Cir. 2007) (describing crime involving "dishonesty as an essential element" as on falling "well within this [Court's] understanding" of the definition of moral turpitude").  The BIA so held, see A.R. 4–5, and its conclusion is subject to due deference.  Mehboob, 549 F.3d at 275 n.2.5

c) Cancellation of Removal

      Singh argues that the BIA incorrectly held that his conviction qualified as an

---

4 Singh also argues that the BIA should have used the categorical approach, because "[i]f [he] was actually convicted based on a determination by the court that he violated 18 U.S.C. § 1029(a)(5)[,] there would be no need for the [BIA to] conduct [] an analysis of whether the offense [involved moral turpitude] under the modified categorical approach."  The modified categorical approach is only necessary due to his *actual* conviction under § 1029(b)(2), thereby requiring us to reference the charging document to ascertain which subsection of § 1029(a) he was alleged to have violated.  In practice, a "categorical" analysis of § 1029(a)(5), which he now urges, would be functionally identical to the modified categorical approach conducted under § 1029(b)(2).

5 We observe, too, that the Court of Appeals for the Ninth Circuit recently held that an 18 U.S.C. § 1029(a)(3) offense, which is similar to the charge at hand, was properly deemed a crime of moral turpitude, in line with the "longstanding rule that crimes that have fraud as an element . . . are categorically crimes involving moral turpitude."  Planes v. Holder, 652 F.3d 991, 997–98 (9th Cir. 2011).

aggravated felony, a determination pretermitting his application for cancellation of removal. 8 U.S.C. § 1229b(a)(3). He claims that the record does not support a conclusion that his offense "involve[d] fraud or deceit in which the loss to the victim or victims exceed[ed] $10,000." 8 U.S.C. § 1101(a)(43)(M)(i); see also 8 U.S.C. § 1101(a)(43)(U) (defining as aggravated felony "an attempt or conspiracy to commit an offense described in this paragraph").

Pursuant to 8 U.S.C. § 1229b(a), "[t]he Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of any aggravated felony." Crucially, an alien who requests this discretionary form of relief bears the burden of establishing his eligibility. 8 C.F.R. § 1240.8(d). "If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." Id.; Salem v. Holder, 647 F.3d 111, 115 (4th Cir. 2011).

We agree with the BIA that Singh has not met his burden in the face of the Government's evidentiary proffer. An analysis under subsection (M)(i) involves two distinct steps: first, a categorical analysis of the relevant statute to determine whether a crime involves fraud or deceit; and second, a "circumstance-specific" approach to determine whether the offense involved a loss exceeding §10,000 tethered to the actual

offense of conviction. <u>Nigel Singh v. Att'y Gen.</u>, 677 F.3d 503, 508 (3d Cir. 2012) (citing <u>Nijhawan v. Holder</u>, 557 U.S. 29, 40 (2009) [6]; <u>Kaplun v. Att'y Gen.</u>, 602 F.3d 260, 265 (3d Cir. 2010)).  We have already discussed the fraudulent nature of Singh's offense. With regard to the circumstance-specific approach, which encompasses "sentencing-related material," <u>id.</u> at 512, we observe that both the indictment and the pre-sentence report reflect that Singh received dollar amounts in excess of $10,000 as proceeds from the conspiracy.  <u>See</u> A.R. 248, 279 ("In total, the defendant is accountable for approximately $665,000 [in] fraudulent credit card charges.").  Singh has not rebutted these facts, and his protestations regarding monetary values assigned to "other 'relevant' criminal conduct," Pet'r's Br. 16, are unavailing; there *was* no other criminal conduct involved in the offense, and the figures mentioned in the indictment and pre-sentence report are sufficiently "tethered" to the offense of conviction.  <u>Singh</u>, 677 F.3d at 508. Singh's arguments to the contrary lack merit.

d) <u>Due Process</u>

Finally, Singh argues that the proceedings before the agency denied him due process.  To the extent that he complains of his appearances before the IJ, we agree with the Government that the claim is unexhausted and we lack jurisdiction to consider it. <u>Castro v. Att'y Gen.</u>, 671 F.3d 356, 365 (3d Cir. 2012).  Otherwise, we detect no sign that

---

6 While <u>Nijhawan</u> involved *removal* on the basis of an aggravated felony charge, its statutory analysis of § 1101(a)(43)(M)(i) remains equally applicable in the cancellation

the agency proceedings were unfair; this claim appears to simply restate Singh's prior grounds for requesting relief.

## IV.

For the aforementioned reasons, we will deny this petition for review.

---

context, as both removal and cancellation rely on the same set of definitions.