NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0193n.06
Filed: December 30, 2004

Nos. 03-4426/04-4036

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

IMAD KHALIL BAZZI,

      Petitioner,

v.

JOHN ASHCROFT, Attorney General,

      Respondent.

_____/

Petition for Review of an Order of
the Board of Immigration Appeals

BEFORE:    RYAN, COLE, and ROGERS, Circuit Judges.

      RYAN, Circuit Judge.     Imad Khalil Bazzi petitions for review of an order of the

Board of Immigration Appeals reinstating his deportation proceedings and mandating his

deportation from the United States, absent his voluntary departure within thirty days. Bazzi

contends the Board's determination that his qualifying marriage was entered into for the

purpose of obtaining entry into the United States is not supported by substantial evidence.

Bazzi also claims the Board erred regarding his eligibility for suspension of deportation,

adjustment of status, and "repapering." Because the Board's determination is supported

by reasonable, substantial, and probative evidence, and because Bazzi's other claims of

error are without merit, the petition for review is **DENIED**.

## I. BACKGROUND

      Bazzi is a forty-two year old native and citizen of Lebanon. He entered the United

States on July 21, 1987, as a conditional permanent resident based on his marriage to

Fadia Faraj, a United States citizen.  The marriage took place in Lebanon in July 1986, shortly after which Faraj returned to the United States.  When Bazzi arrived in this country in 1987, he lived with Faraj at her father's house.

Less than four months after Bazzi's arrival in the United States, Faraj filed a complaint for annulment of the marriage, which was granted by the Wayne County Circuit Court in November 1989.  The judgment of annulment was entered after an evidentiary hearing and was based upon the circuit judge's finding that Bazzi had committed a fraud on Faraj in order to gain entry into the United States.

Before the marriage was annulled, Bazzi filed with the Immigration and Naturalization Service a Form I-752, Application for Waiver of Requirement to File Joint Petition for Removal of Conditions.  On February 21, 1990, the INS denied the waiver application and also served Bazzi with an Order to Show Cause, charging he was deportable on two grounds.  First, the INS alleged Bazzi was deportable under the Immigration and Nationality Act (INA) § 241(a)(9)(B), 8 U.S.C. § 1251(a)(9)(B) (1988) (current version at 8 U.S.C. § 1227(a)(1)(G) (1999)), as an alien whose conditional permanent resident status was terminated because the Attorney General determined his qualifying marriage was entered into for the purpose of procuring his entry into the United States.  Second, the INS alleged Bazzi was deportable under INA § 216(c)(2), 8 U.S.C. § 1186a(c)(2) (1986), for failing to file a timely petition to remove the conditions attached to his status, and for failing to appear for an interview to remove the conditions.

On September 27, 1990, an evidentiary hearing concerning Bazzi's deportation was held before an Immigration Judge.  Regarding the first charge, the IJ determined the government did not prove, by a preponderance of the evidence, that Bazzi entered into his

marriage for the purpose of procuring entry into the United States. Regarding the second charge, the IJ concluded Bazzi was deportable for failing to file a timely joint petition to remove the conditions attached to his permanent resident status. However, the IJ granted Bazzi's application for asylum based on his finding that Bazzi had been persecuted in Lebanon and likely would be persecuted upon his return.

The INS appealed the IJ's decision to the Board. Meanwhile, the Attorney General exercised his statutory authority and declared Lebanese nationals in the United States to be eligible for "temporary protected status." Given this development, the Board sua sponte ordered the case "continued indefinitely" on April 15, 1991, to allow Bazzi to apply for temporary protected status.

In 1993, after the Attorney General terminated the eligibility of Lebanese nationals for temporary protected status, the INS filed a motion with the Board to recalendar its appeal from the IJ's 1990 decision. On October 3, 1995, Bazzi filed with the Board a motion to reopen his deportation proceedings and to remand his case to the IJ to enable him to apply for adjustment of status and suspension of deportation. In support of his adjustment of status application, Bazzi submitted an approved visa petition filed by his second wife, whom he married in 1990. The Board granted Bazzi's motion to reopen, and declined to address the INS's appeal in light of the remand.

The INS subsequently filed with the immigration court a motion to pretermit Bazzi's application for adjustment of status on the basis that the approval of his visa petition had been revoked by the INS, and thus, he was no longer eligible for adjustment of status. The INS also filed a motion to pretermit Bazzi's application for suspension of deportation. On April 10, 1998, the IJ pretermitted both of Bazzi's applications, and certified to the Board

the unrelated question of whether the IJ had jurisdiction to hold an asylum hearing. The INS filed a notice of appeal to ensure that the issues it previously appealed, but which were left undecided, were preserved for the Board's review.

The Board subsequently reviewed the IJ's certified question and determined the IJ was free to consider additional evidence on asylum. The Board remanded the case for further proceedings. On remand, the IJ denied Bazzi's applications for asylum and withholding of deportation, granted Bazzi voluntary departure, and entered a default order of deportation to Lebanon. Bazzi appealed the denial of asylum to the Board, and the INS also filed a notice of appeal to preserve and continue its appeal of the IJ's 1990 decision.

On April 16, 2003, the Board administratively closed Bazzi's deportation proceedings due to its belief that Bazzi may be eligible for cancellation of removal proceedings under the "repapering" provision found in § 309(c)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996) (codified at 8 U.S.C. § 1101 note (1999)). On May 15, 2003, the INS moved to reinstate its appeal. On October 6, 2003, the Board granted the INS's motion to reinstate its appeal, dismissed Bazzi's appeal, and sustained the INS's appeal from the IJ's 1990 decision. Specifically, the Board reversed the IJ's finding that the INS failed to meet its burden of proving Bazzi's marriage was entered into for the purpose of procuring entry into the United States. Bazzi subsequently filed a petition for review in this court.

Because Bazzi's deportation proceedings commenced before April 1, 1997, and the Board issued its final order of deportation on October 6, 2003, his petition is governed by the transitional rules of IIRIRA. IIRIRA § 309(c)(1) (codified at 8 U.S.C. § 1101 note (1999)). Under the transitional rules, judicial review of Bazzi's petition is governed by

former section 106 of the INA, 8 U.S.C. § 1105a (1994), as amended by IIRIRA. Harchenko v. INS, 379 F.3d 405, 408-09 (6th Cir. 2004).

## II.  ANALYSIS

### A.

An alien is deportable if he or she "is an alien with permanent resident status on a conditional basis under section 1186a of [the INA] and has such status terminated under such section."  INA § 241(a)(9)(B), 8 U.S.C. § 1251(a)(9)(B) (1988) (current version at 8 U.S.C. § 1227(a)(1)(G) (1999)).  INA § 216 mandates termination of permanent resident status upon a determination by the Attorney General that the qualifying marriage "was entered into for the purpose of procuring an alien's admission as an immigrant."  INA § 216(b)(1), 8 U.S.C. § 1186a(b)(1)(A)(i) (1999).

Bazzi first contends that the Board's finding that his marriage was entered into in order to evade the immigration laws is not supported by substantial evidence. A factual determination by the Board that an alien's marriage was entered for the purpose of gaining entry into the United States is conclusive if it is supported by reasonable, substantial, and probative evidence in the record considered as a whole.  INA § 106(a), 8 U.S.C. § 1105a(4) (1994) (repealed 1996, except as provided by IIRIRA § 309(c)(1)); see Bu Roe v. INS, 771 F.2d 1328, 1331 (9th Cir. 1985).  A court may not reverse a factual finding of the Board merely because it would have reached a different conclusion based upon its review of the record; the Board's finding must be sustained unless the petitioner's evidence compels a contrary conclusion.  See INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).

The Board, in reversing the IJ's determination that Bazzi had not engaged in marriage fraud, relied heavily on the previous annulment of Bazzi's qualifying marriage by

the Wayne County Circuit Court in 1989. The judgment of annulment was granted after an evidentiary hearing in which the circuit judge found that the purpose of the marriage to Faraj was merely to allow Bazzi to gain access to the United States. The circuit judge determined that Bazzi was not a credible witness, that the marriage had not been consummated, that Faraj had filed a complaint for divorce several months after Bazzi's arrival in the United States, and that Bazzi had perpetrated a fraud on Faraj. In addition to the findings set forth in the judgment of annulment, the Board also relied on its observation that Bazzi married a Lebanese national less than four months after the qualifying marriage was annulled.

In Rodriguez v. INS, 204 F.3d 25 (1st Cir. 2000), a panel of the First Circuit considered a petition for review involving facts remarkably similar to those before us. In that case, the court reviewed a decision of the Board affirming a deportation order in which the petitioner was found to have engaged in marriage fraud. The court determined that a New York judgment of annulment, "specifically based upon a finding of fraudulent intent to evade the immigration laws," was "very powerful evidence that the original intent was to use marriage as a device to evade the immigration laws." Id. at 28. The court reasoned that "[t]his was a judgment, the validity of which is not contested, entitled to full faith and credit, and immune from collateral attack." Id.

Notwithstanding the judgment of annulment determining he engaged in marriage fraud, Bazzi points to inconsistent testimony given during his 1990 deportation hearing in alleging the Board's decision was not based on substantial evidence. During that hearing, the IJ determined that the government had failed to prove Bazzi's marriage was fraudulent, due, in part, to conflicting testimony given by Faraj. While these and other considerations

apparently informed the IJ's decision, the Board gave it little deference because the IJ failed to explain why the findings in the judgment of annulment were ignored.

We have independently reviewed the record. In view of the judgment of annulment and the other evidence noted by the Board, its determination that Bazzi married for the purpose of gaining entry into the United States is supported by reasonable, substantial, and probative evidence, and there is no countervailing evidence in the record to compel a contrary conclusion.

**B.**

Bazzi next argues that, by determining he engaged in marriage fraud and refusing to grant his application for adjustment of status, the Board erred because its decision violated United States and international asylum law relating to the protection of refugees. He contends that refugees fleeing their country of persecution often resort to fraud and misrepresentation in order to enter the country of refuge. In support of his argument, Bazzi directs our attention to United States immigration law, which permits the Attorney General to waive a finding of fraud for refugees who apply for adjustment of status. INA § 209, 8 U.S.C. § 1159(c) (1999). He also notes that Article 31 of the United Nations Convention Relating to the Status of Refugees, 189 U.N.T.S. 150 (July 28, 1951) (the Convention), prohibits the imposition of penalties on refugees due to "their illegal entry or presence" if the refugees "present themselves without delay to the authorities and show good cause for their illegal entry or presence."

An alien who gains admission into the United States by fraud is ineligible to receive a visa or to otherwise gain lawful admission into the United States. 8 U.S.C. § 1182(a)(6)(C)(i) (1999). An alien who obtains admission into the United States by way of

a marriage contracted for the purpose of evading the immigration laws commits fraud within the meaning of § 1182(a)(6)(C)(i). 8 U.S.C. § 1227(a)(1)(G) (1999). The Attorney General may waive the finding of fraud for refugees who apply for adjustment of status under INA § 209, but only for "humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." INA § 209, 8 U.S.C. § 1159(c) (1999). To be eligible for adjustment of status under INA § 209, an applicant must "continue[] to be a refugee within the meaning of section 1101(a)(42)(A) . . . ." INA § 209, 8 U.S.C. § 1159(b)(3) (1999).

During his asylum hearing in 1999, the IJ specifically determined Bazzi was no longer a refugee within the meaning of § 1101(a)(42)(A). Bazzi does not contest this finding in his petition. Accordingly, because the waiver provision contained in INA § 209, 8 U.S.C. § 1159(c), can be enjoyed only by refugees who apply for adjustment of status, Bazzi cannot avail himself of this provision.

The denial of Bazzi's application for adjustment of status does not violate Article 31 of the Convention. Even assuming the denial of his application constitutes a penalty, which is doubtful, Bazzi is not insulated from punishment merely by virtue of his former status as a refugee. Under the Convention, refugees must also present themselves to the authorities without delay and establish good cause for their illegal entry or presence. Bazzi has denied any illegal entry in the first instance because he alleges his qualifying marriage was entered into in good faith. He has not established, or even attempted to establish, that there was good cause for the fraudulent marriage to Faraj. Consequently, the Board did not violate the Convention in refusing to grant Bazzi's application for adjustment of status.

**C.**

Bazzi argues this court should remand his case so the Board can determine whether he is eligible for suspension of deportation in light of our decision in Aoun v. INS, 342 F.3d 503 (6th Cir. 2003). Like the alien in Aoun, Bazzi's application for suspension of deportation was denied by the IJ due to the retroactive application of the "stop-time" rule. We note that the Board has already considered Aoun v. INS and has determined that Bazzi is ineligible for suspension of deportation. In re Bazzi, 2004 WL 2374488 (BIA July 27, 2004) (unpublished opinion).

Prior to the amendment of the INA by IIRIRA, an alien was eligible for suspension of deportation if, among other requirements, he or she had been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of his or her application for suspension of deportation. INA § 224(a)(1), 8 U.S.C. § 1254(a)(1) (1995) (repealed 1996); Aoun, 342 F.3d at 506. Time for continuous physical presence could accrue while the alien was in deportation proceedings. Aoun, 342 F.3d at 506. After the effective date of IIRIRA on April 1, 1997, an alien's continuous physical presence ended when, among other things, the alien was served with a "notice to appear" for deportation proceedings. 8 U.S.C. § 1229b(d)(1) (West Supp. 2004). This is commonly referred to as the stop-time rule. In Suassuna v. INS, 342 F.3d 578, 582-83 (6th Cir. 2003), we held that, in deportation proceedings pending as of April 1, 1997, the stop-time rule for calculating an alien's continuous physical presence applies retroactively to orders to show cause issued before the enactment of the stop-time rule.

In Aoun, an alien appealed the Board's refusal to reopen his application for suspension of deportation due to the preclusive effect of the stop-time rule. 342 F.3d at 504. During deportation proceedings, Aoun filed an application for suspension of

deportation, but withdrew the application in 1986 due to the erroneous advice of an attorney. Id. Having realized his mistake, Aoun filed a motion with the Board in 1987 to remand his case to the immigration court to enable him to reapply for suspension of deportation. Id. at 505. Before the Board ruled on the motion and his other pending appeals, the proceedings were "continued indefinitely" so Aoun could pursue legalization. Id.

In 1993, the INS filed a motion with the Board to reinstate Aoun's deportation proceedings, but the Board did not grant the motion until June 9, 2000. Id. Meanwhile, the stop-time rule went into effect on April 1, 1997. After proceedings were reopened, Aoun filed a motion to reopen his application for suspension of deportation, but the motion was denied under the stop-time rule because Aoun could not establish he had seven years of "continuous physical presence," despite twenty-two years of residence in the United States. Id.

On appeal, we reversed the Board's decision due to "the unfairness that would result from applying the stop time rule retroactively in this case." Id. at 507. The court observed that, under the former rules, Aoun would easily have met the seven-year requirement had his application been considered before his proceedings were continued. Id. The court noted that the "administrative closure" delaying consideration of the application was not the fault of Aoun, and that the INS was primarily responsible for the delays in proceedings. Id. The court also pointed to the unexplained six-and-one half year delay between the recalendaring of proceedings in 1993 and action on Aoun's appeal in 2000. Id. at 508-09.

The denial of Bazzi's application for suspension of deportation does not share the same inequities which gave rise to our decision in Aoun. In that case, over twelve years elapsed from the time Aoun filed his application for suspension of deportation in 1987 until the application was denied in 2000. In contrast, less than three years elapsed from the time Bazzi applied for this relief on October 3, 1995, until his application was pretermitted on April 10, 1998. Moreover, the evidence in the record suggests that both Bazzi and the immigration court were equally responsible for the delayed consideration of Bazzi's suspension of deportation application. On October 3, 1995, Bazzi filed with the Board a motion to reopen his deportation proceedings and to remand his case to the IJ to enable him to apply for adjustment of status and suspension of deportation. Although the immigration court did not schedule a Master Calendar hearing until more than ten months after the Board remanded his case, the record indicates that after his proceedings were reopened, Bazzi actively pursued his application for adjustment of status as a priority, not his application for suspension of deportation. Additionally, the Aoun panel noted that Aoun had a reasonable expectation, due to the inexplicable lack of action in his case, that relief would eventually be granted to him. Id. Bazzi had no such reasonable expectation; he was aware at all times that a case was pending against him, and that he might be deported. He married his current wife when he had pending an application for waiver of a condition that he knew would, if it were not waived, require his deportation. Therefore, none of the equitable concerns presented by Aoun are applicable here.

**D.**

Finally, Bazzi argues the Board abused its discretion by reopening his deportation proceedings and declining to "repaper" him. The decision of the Board to grant or deny a

motion to reopen is reviewed for abuse of discretion. Sinistaj v. Ashcroft, 376 F.3d 516, 519 (6th Cir. 2004); 8 C.F.R. § 1003.2(a) (2004). "The granting of a motion to reopen [deportation proceedings] is thus discretionary, . . . and the Attorney General has broad discretion to grant or deny such motions." INS v. Doherty, 502 U.S. 314, 323 (1992) (internal quotation marks and citations omitted).

Section 309(c)(3) of IIRIRA gives the Attorney General the option "to terminate [deportation] proceedings in which there has not been a final administrative decision and to reinitiate [removal] proceedings." IIRIRA §309(c)(3) (codified at 8 U.S.C. § 1101 note (1999)). This procedure is commonly referred to as "repapering." Although a proposed rule on repapering was published in the Federal Register for comments, see 65 Fed. Reg. 71273 (to be codified at 8 C.F.R. § 240.3) (proposed Nov. 30, 2000), to date, the Attorney General has not issued final regulations implementing IIRIRA § 309(c)(3). Repapering would allow an alien like Bazzi, who is ineligible for suspension of deportation due to the operation of the stop-time rule, but ostensibly eligible for cancellation of removal, to pursue termination of deportation proceedings and reinitiate removal proceedings.

Bazzi argues the Board abused its discretion by reopening his deportation proceedings because it should have withheld adjudication of his case until the Attorney General issued regulations to evaluate his claim of repapering eligibility. Contrary to Bazzi's assertion, the Attorney General does not have a congressionally mandated duty to implement repapering regulations because § 309(c)(3) of IIRIRA merely gives the Attorney General the option to terminate deportation proceedings and reinstate removal proceedings.

Because the statute simply does not mandate repapering regulations, but rather vests the decision whether to convert pending suspension of deportation cases into cancellation of removal cases in the Attorney General alone, [an alien] has no right—either statutory or constitutional—to have [his or] her case repapered.

Rojas-Reyes v. INS, 235 F.3d 115, 125-26 (2d Cir. 2000).  Accordingly, the Board did not abuse its discretion by declining to hold Bazzi's case in abeyance until such regulations are issued.

## III.  CONCLUSION

We note, as have previous panels of this court, that we are troubled by the INS's failure to move expeditiously in cases where delays in deportation such as those faced by Bazzi have unfortunate collateral consequences for U.S. citizen children and relatives of deportees.  See, e.g., Haddad v. INS, 7 Fed. Appx. 420, 424 (6th Cir. 2001) (unpublished opinion).  Nonetheless, for the foregoing reasons, Bazzi's petition for review is **DENIED**.