PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 08-3874
———

MUHAMMAD SAEED MALIK,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
———

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A046-964-203)
Immigration Judge:  Honorable Mirlande Tadal

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 23, 2011

Before:  FISHER, HARDIMAN and GREENAWAY, Jr.,
*Circuit Judges*.

(Filed: October 4, 2011)

M. Anne Hannigan, Esq.
777 North Michigan Avenue, Suite 3009
Chicago, IL  60611

Gopal T. Kukreja, Esq.
147 West 35th Street, Suite 209
New York, NY  10001
        *Counsel for Petitioner*

Thomas W. Hussey, Esq.
Daniel I. Smulow, Esq.
Paul F. Stone, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
        *Counsel for Respondent*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Muhammad Saeed Malik seeks review of the decision of the Board of Immigrations Appeals ("BIA") sustaining his removability from the United States.  Malik argues the BIA erred in affirming the decision of the Immigration Judge ("IJ") that he obtained a visa through a fraudulent marriage

and that 8 U.S.C. § 1256(a) did not bar the institution of removal proceedings against him. We will dismiss the petition for review.

I.

Malik is a native and citizen of Pakistan who entered the United States in April 1999 as a legal permanent resident ("LPR") after receiving an IR-1 immigrant visa based on his 1996 marriage to Margarita Ramos, a United States citizen. Malik and Ramos were divorced in 2000. In 2005, the Department of Homeland Security ("DHS") initiated removal proceedings, charging Malik with being removable under 8 U.S.C. § 1227(a)(1)(A), for being inadmissible upon entry, and under 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who attempted to procure a visa through fraud.

Before the IJ, Malik argued that 8 U.S.C. § 1256(a) prohibited institution of removal proceedings against him because more than five years had passed since his admission to the United States in 1999. Additionally, he maintained that his marriage to Ramos was legitimate. At the hearing before the IJ, Malik, Ramos, Malik's brother, and his sister-in-law testified that Malik and Ramos married on November 25, 1996, in Pakistan. Beyond that, however, their stories diverged considerably. Malik claimed his relationship with Ramos began by telephone and letters several months prior to her arrival in Pakistan. Malik testified that Ramos intended to marry him when she came to Pakistan, that the couple did marry, and that they consummated their marriage. After Ramos returned to the United States a few days later, Malik testified that he stayed in contact with her by calling her at his

3

brother's house where she stayed at least twice a week. Eventually, Malik secured a visa through the U.S. consulate in Pakistan, with Ramos as his sponsor, and he arrived in the United States. Shortly thereafter, Ramos informed Malik that she was pregnant with another man's child and asked for a divorce.

By contrast, Ramos testified that she traveled to Pakistan with Malik's sister-in-law to help her babysit. She stated that she and Malik were introduced to each other in Pakistan, and that he mentioned marriage a few days before she was going to leave. She decided to marry him because she thought they could have a future together. Ramos, however, testified that, after marrying, they did not consummate their marriage and that Malik never contacted her after she returned to the United States. Further, she denied staying at Malik's brother's house. She explained that she completed the visa petition for Malik because she wanted to be with him, but abandoned her attempts to assist him after he did not contact her. As a result, Ramos started seeing another man, became pregnant, and gave birth in September 1998.

The IJ ruled that 8 U.S.C. § 1256(a) did not prevent the institution of removal proceedings, and rejected Malik's version of the events. The IJ concluded the marriage was fraudulent because Malik and Ramos never intended to

4

establish a life together. The BIA affirmed,[1] reasoning that 8 U.S.C. § 1256(a) did not apply to Malik because his status was never adjusted to LPR. Malik filed this timely petition for review.

## II.

The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction under 8 U.S.C. § 1252(a). We review the BIA's disposition and look to the IJ's ruling only insofar as the BIA defers to it. *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010). We review the BIA's legal conclusions de novo.[2] *Id.* We defer to those factual findings that are supported by substantial evidence, and will reverse only "if no reasonable fact finder could make

---

[1] On August 18, 2008, the BIA affirmed the IJ's decision and rejected Malik's statute of limitations argument. Following our decision in *Garcia v. Attorney General*, 553 F.3d 724 (3d Cir. 2009), which discussed the statute of limitations in the context of removal proceedings, we granted the Attorney General's unopposed motion to remand. On remand, the BIA reaffirmed its prior decision on April 6, 2010.

[2] The Attorney General's interpretation of the statute of limitations in 8 U.S.C. § 1256(a) is not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See Bamidele v. INS*, 99 F.3d 557, 561-62 (3d Cir. 1996).

5

that finding on the administrative record." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003).

## III.

Malik advances two arguments in support of his petition. First, he asserts that the five year statute of limitations in 8 U.S.C. § 1256(a) bars the institution of removal proceedings against him. Second, he maintains he did not obtain his visa through fraud because his marriage to Ramos was legitimate. We address each contention in turn.

## A. Statute of Limitations

Under 8 U.S.C. § 1256(a):

If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling removal in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made.

Malik claims that the terms "otherwise adjusted under . . . any other provision of law" include an alien who was issued an immigrant visa through the consular process and admitted to the United States as an LPR. The Attorney General acknowledges that Malik was an LPR for more than five years prior to the commencement of removal proceedings, but maintains that § 1256(a) does not apply because Malik obtained his status through the consular process, not through an adjustment of status.

Our resolution of this issue is informed by our decisions in *Bamidele v. INS*, 99 F.3d 557 (3d Cir. 1996) and *Garcia v. Attorney General*, 553 F.3d 724 (3d Cir. 2009). In *Bamidele*, the petitioner's status was adjusted to LPR based on his marriage to a U.S. citizen. 99 F.3d at 559. After he was charged with being removable more than five years later because he obtained the adjustment fraudulently, Bamidele claimed that 8 U.S.C. § 1256(a) barred the institution of removal proceedings. The Attorney General agreed § 1256(a) proscribed an untimely rescission of an adjustment of status, but insisted it did not bar removal proceedings based on fraud in obtaining the adjustment of status. Rejecting this argument, we determined that "the running of the limitation period bars the rescission of Bamidele's permanent resident status and, in the absence of the commission of any other offense, thereby bars initiation of deportation proceedings[.]" *Id.* at 563.

Subsequent to *Bamidele*, § 1256(a) was amended to state that "[n]othing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien." 8 U.S.C.

7

§ 1256(a). In *Garcia*, an alien residing in the United States received an adjustment of status to LPR, asserting that she was an unmarried adult child of a U.S. citizen. 553 F.3d at 726. Later, DHS instituted removal proceedings when an investigation revealed that the woman Garcia claimed to be her mother was not, in fact, her mother. Because eight years had passed since Garcia received her adjustment of status, she asserted that § 1256(a) barred her removal. The Attorney General responded that the amendment to § 1256(a) permitted the institution of removal proceedings against Garcia. We held that the statutory amendment did not impact the operation of the five-year time limit to removal proceedings. Reaffirming *Bamidele*, we determined that § 1256(a) prohibits the institution of removal proceedings after five years based on an alien's erroneously granted adjustment of status.

The import of *Garcia* and *Bamidele* is that the time bar in § 1256(a) applies to both rescission and removal proceedings initiated based on a fraudulent adjustment of status. These decisions, however, are distinguishable from Malik's situation in a significant aspect: Malik never received an adjustment of status. Rather, he obtained his LPR status by receiving an immigrant visa through the consular process. Historically, "immigrant status was predicated upon the issuance of an immigrant visa, which could be obtained only at U.S. consular offices abroad." *Landin-Molina v. Holder*, 580 F.3d 913, 915-16 (9th Cir. 2009). With the enactment of 8 U.S.C. § 1255, however, Congress "authorized a process – 'adjustment of status' – whereby certain aliens physically present in the United States could

8

seek lawful permanent resident status without having to depart this country." *Id.* at 916. In this regard, there are two distinct paths for an alien to obtain LPR status: (1) through consular processing, 8 U.S.C. § 1201(a); and (2) through an adjustment of status, 8 U.S.C. § 1255.

"The plain language of the statute is the 'starting place in our inquiry.'" *United States v. Introcaso*, 506 F.3d 260, 264 (3d Cir. 2007) (quoting *Staples v. United States*, 511 U.S. 600, 605 (1994)). Section 1256(a) speaks of the Attorney General's responsibility to take action on an erroneously granted adjustment within five years if "the *status of a person has been otherwise adjusted* under . . . any other provision of law to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1256(a) (emphasis added). Malik did not obtain an adjustment of status to become an LPR. Instead, he derived his LPR status through the process described in 8 U.S.C. § 1201. Because § 1256(a) explicitly discusses "adjustment of status," the statute of limitations does not apply to the institution of removal proceedings where Malik did not obtain his LPR status in this manner. Given that there is nothing in the statute to suggest its applicability to proceedings against an alien who never adjusted his status, Malik's argument fails.

### B. Whether the Marriage was Fraudulent

Second, Malik argues that the BIA erred in affirming the IJ's decision that he entered into a fraudulent marriage. An alien bears the burden to establish that the marriage "was not contracted for the purpose of evading any provisions of the immigration laws." 8 U.S.C. § 1227(a)(1)(G)(i). When

9

determining whether a marriage is fraudulent, we consider whether the parties intended to establish a life together at the time of marriage. *See*, *e.g.*, *Rodriguez v. INS*, 204 F.3d 25, 27 (1st Cir. 2000); *Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir. 1975); *In re Soriano*, 19 I. & N. Dec. 764, 765 (BIA 1988). Post-marriage conduct may be relevant to resolving this issue, insofar as it reveals the couple's state of mind at the time they married. *See Rodriguez*, 204 F.3d at 27; *Bark*, 511 F.2d at 1202. In reviewing the BIA's affirmance of the IJ's decision, we examine whether there was substantial evidence to sustain the conclusion that Malik and Ramos did not intend to establish a life together. *Dia*, 353 F.3d at 249.

We determine that substantial evidence supports the finding that Malik and Ramos did not so intend. Even though Malik and Ramos testified that they wanted to have a future together, the IJ permissibly concluded that their post-marriage conduct belied that assertion. The parties' testimony conflicted on many crucial aspects. Ramos testified that Malik never contacted her after she returned to the United States. Conversely, Malik asserted that he communicated with Ramos through letters and phone calls to his brother's house. Malik's brother and sister-in-law corroborated this testimony. Nevertheless, the IJ credited Ramos' testimony because it found it problematic that Ramos was pregnant and gave birth without Malik's brother or sister-in-law noticing, given that she was supposedly in frequent contact with them. Although Malik's brother and sister-in-law explained that they were unaware of Ramos' pregnancy because she was heavy set, they also admitted she was not so overweight that a pregnancy would have been unnoticeable. To this end, the IJ

10

concluded that Ramos never stayed with Malik's brother, Malik did not contact Ramos during their separation, and the lack of communication demonstrated that the couple did not intend to establish a life together. The IJ's determination was reasonable because it would have been difficult for Ramos to have stayed with Malik's brother for two nights per week and have her pregnancy and subsequent birth go undetected. As such, a reasonable fact finder could conclude that the marriage between Malik and Ramos was fraudulent. *Id.*

## IV.

For the foregoing reasons, we will deny the petition for review.

11