# United States Court of Appeals
## For the First Circuit

No. 15-2254

JANARIUS ELANJWE NANJE,

Petitioner, Appellant,

v.

LUIS CHAVES, Lawrence Field Office Director,
United States Citizenship and Immigration Services, ET AL.,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Judith G. Dein, U.S. Magistrate Judge]

Before

Torruella, Selya and Thompson,
Circuit Judges.

Todd C. Pomerleau, with whom Rubin Pomerleau P.C. was on brief, for appellant.
Emma C. Winger and Wendy S. Wayne on brief for the Massachusetts Committee for Public Counsel Services Immigration Impact Unit and the National Immigration Project of the National Lawyers Guild, amici curiae.
Christine J. Wichers, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellees.

September 9, 2016

**SELYA**, **Circuit Judge**.  The lead-in to a serialized radio program, wildly popular in the mid-1900s, warned that "the weed of crime bears bitter fruit."  In his quest for naturalization (which rests at the epicenter of this appeal), the petitioner has learned that hard lesson at first hand.  The tale follows.

## I.  BACKGROUND

Petitioner-appellant Janarius Elanjwe Nanje is a native of Cameroon who has been a lawful permanent resident of the United States since 2002.  In March of 2005, he was charged in a Massachusetts court with two counts of filing false health care claims, one count of larceny, and one count of attempted larceny all in violation of various Massachusetts statutes.

The record reflects that the appellant submitted a claim to Harvard Pilgrim Health Care (Harvard Pilgrim) for reimbursement of medical expenses allegedly incurred during a trip to Cameroon. Harvard Pilgrim took the appellant at his word and paid him $11,965 without investigating his claim.  When the appellant submitted a second claim for an even larger sum, however, Harvard Pilgrim investigated and, with the help of a federal agent stationed in Cameroon, determined that the appellant had not received any of the care for which reimbursement was sought.  The second claim was denied, the first claim was deemed fraudulent, and the matter was turned over to the authorities.

The appellant ultimately pleaded guilty to one count of filing a false health care claim, in violation of Mass. Gen. Laws ch. 175H, § 2; one count of larceny, in violation of Mass. Gen. Laws ch. 266, § 30(1); and one count of attempted larceny, in violation of Mass. Gen. Laws ch. 274, § 6.[1] The Boston Municipal Court (the BMC) continued the case for nine months without a finding and ordered the appellant to pay $12,000 in restitution.[2] The court did not allocate the restitution among the counts of conviction. By April of 2006, the appellant had paid the full restitution amount and his case was dismissed.

In the meantime, the appellant had filed a petition for naturalization with the appropriate agency, United States Citizenship and Immigration Services (USCIS). He was scheduled to attend a naturalization hearing in 2011 but — having been advised

---

[1] This final count was charged under the general attempt statute. Throughout, however, the parties have described the offense as attempted larceny.

[2] A continuance without a finding occurs when the defendant agrees to satisfy particular terms during a probationary period without an express finding of guilt. See United States v. Mensah, 737 F.3d 789, 793 n.4 (1st Cir. 2013) (citing Mass. Gen. Laws ch. 278, § 18). As long as the defendant satisfies the imposed terms, his case will be dismissed when the probationary period expires. See id. The BMC's continuance without a finding nonetheless serves as a conviction for present purposes: where, as here, an alien admits "sufficient facts to warrant a finding of guilt" and a judicial officer orders some form of punishment, the Immigration and Nationality Act (INA) treats the matter as a conviction. See 8 U.S.C. § 1101(a)(48)(A); Herrera-Inirio v. INS, 208 F.3d 299, 304 (1st Cir. 2000).

- 3 -

that his criminal record not only might thwart his quest for naturalization but also might render him deportable — he withdrew his application before any hearing was held.

Faced with this unwelcome prospect, the appellant tried in various ways to revise his criminal record. We chronicle only those efforts that are relevant to this appeal.

In December of 2010, the appellant (represented by new counsel) moved in the BMC to vacate his admission to sufficient facts. He maintained that his lawyer had failed to inform him of the immigration consequences of his plea, thus depriving him of the effective assistance of counsel. See Padilla v. Kentucky, 559 U.S. 356, 366-69 (2010); see also Commonwealth v. Saferian, 315 N.E.2d 878, 882-83 (Mass. 1974). The BMC denied the motion, concluding that even if counsel's performance was objectively unreasonable, no cognizable prejudice resulted. The appellant eschewed any appeal of this adverse ruling.

Early in 2012, the appellant moved to amend the sentence in the criminal case. That motion sought an order to the effect that the $12,000 restitution amount should be considered equally divided between the false health care and larceny counts. "[R]earranging the restitution amount amongst the counts in the complaint," the appellant asserted, would protect his ability to become a naturalized citizen because the amount of restitution paid with respect to the false health care count would be less

than $10,000. In July of 2012, the BMC entered a one-line order allowing the appellant's motion to clarify the docket with respect to the amount of restitution that applied to each count.

With this supplementary order in place, the appellant again applied for naturalization. USCIS denied this renewed application in March of 2013. It concluded that the appellant had been convicted of an aggravated felony (the false health care charge) and was therefore unable to demonstrate good moral character — a prerequisite for naturalization. See 8 U.S.C. § 1101(a)(43)(M)(i) (classifying as an aggravated felony any offense that involves fraud or deceit in which the loss to the victim exceeds $10,000). Although USCIS acknowledged that the BMC had subsequently split the appellant's restitutionary obligation evenly between the false health care and larceny counts, it nevertheless determined that the record reflected a loss to the victim of the false health care claim of more than $10,000.

In response, the appellant requested a hearing before the agency. After the hearing was held — but before USCIS issued its final decision — the appellant returned to the BMC and filed yet another motion in November of 2013. This motion sought to "clarify" his sentence, asking the court to specify that the total amount of loss attributable to the false health care charge was no more than $6,000 and that this sum was separate and distinct from

the amount of loss attributable to the larceny charge.[3] The court obliged, signing an order to that effect in January of 2014 (the 2014 Order).

That same month, USCIS again denied the appellant's petition for naturalization. In so ruling, USCIS reiterated that the record established that the appellant had been convicted of an aggravated felony. In its view, then, the appellant remained ineligible for naturalization.

The appellant did not go quietly into this bleak night. Instead, he filed a petition for judicial review in the federal district court. See 8 U.S.C. § 1421(c). The parties agreed to proceed before a magistrate judge. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(a). In due course, they cross-moved for summary judgment.

In his motion, the appellant argued that his petition for naturalization had been improperly rebuffed because — even though he had been convicted of a crime of fraud or deceit — the 2014 Order established that the amount of loss to the victim of that crime was less than $10,000. The government demurred, arguing that the totality of the circumstances plainly supported USCIS's

---

[3] One impetus for this motion was the appellant's apparent concern that the earlier order of the BMC might be disregarded by USCIS because it dealt with "restitution" rather than "amount of loss." See, e.g., Munroe v. Ashcroft, 353 F.3d 225, 227 (3d Cir. 2003) (acknowledging that restitution amounts might not reflect amount of loss).

finding that the amount of loss to the victim (Harvard Pilgrim) exceeded $10,000. Following oral argument, the court denied the appellant's motion and granted the government's motion. See Nanje v. Chavez, 134 F. Supp. 3d 544, 556 (D. Mass. 2015). This timely appeal ensued.

## II. ANALYSIS

The statutory provision that authorizes judicial review of USCIS's decision entitled the appellant to de novo review in the district court. See 8 U.S.C. § 1421(c); see also Aparicio v. Blakeway, 302 F.3d 437, 445 (5th Cir. 2002). We, in turn, afford de novo review to the district court's entry of summary judgment in favor of the government in this naturalization case. See Kariuki v. Tarango, 709 F.3d 495, 501 (5th Cir. 2013); Chan v. Gantner, 464 F.3d 289, 292 (2d Cir. 2006) (per curiam). The conventional summary judgment paradigm requires the moving party to show that "there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court reads the record in the light most hospitable to the non-moving party and draws all reasonable inferences in his favor. See Gomez v. Stop & Shop Supermkt. Co., 670 F.3d 395, 396 (1st Cir. 2012).

Here, the parties quarrel over whether this conventional framework applies in the naturalization context. The appellant asserts that it does. The government disagrees, noting that "it

has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967). It adds that "doubts should be resolved in favor of the United States and against the claimant." Id. (internal quotation marks omitted).

We need not resolve this contretemps. The parties agree on the facts, and neither has suggested that any additional facts outside the existing record bear on the salient issues.[4] Moreover, in this case all roads lead to Rome: even if we assume, favorably to the appellant, that all reasonable inferences are to be drawn in his favor, his appeal fails.

The INA provides that "[n]o person . . . shall be naturalized" unless he can show that he is "a person of good moral character." 8 U.S.C. § 1427(a)(3); see Berenyi, 385 U.S. at 636-37. Persons who have been convicted of aggravated felonies are categorically disqualified from attempting to show good moral character. See 8 U.S.C. § 1101(f)(8). An aggravated felony is an

---

[4] Given that all of the pertinent facts were before the district court on the cross-motions for summary judgment, it would have been prudent for the court to advise the parties that it planned to decide the case as a case stated. See, e.g., TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007); EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 603 (1st Cir. 1995); see also Pac. Indem. Co. v. Deming, ___ F.3d ___, ___ (1st Cir. 2016) [No. 15-2386, slip op. at 7-9]. That course of action would have rendered irrelevant any question about the contours of the summary judgment standard in a naturalization case.

offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." Id. § 1101(a)(43)(M). Filing a false health care claim is therefore considered a crime of fraud or deceit.[5] See Kawashima v. Holder, 132 S. Ct. 1166, 1172 (2012) (explaining that crimes that "necessarily entail fraudulent or deceitful conduct" fall within this statutory taxonomy).

It is undisputed that the appellant was convicted of a crime involving fraud or deceit (namely, filing a false health care claim). The critical issue here is whether the loss attributable to that crime exceeded $10,000. The appellant argues that, in resolving this issue, USCIS was required to give the 2014 Order dispositive weight and erred in looking beyond this order. We do not agree.

The beacon by which we must steer is the Supreme Court's decision in Nijhawan v. Holder, 557 U.S. 29 (2009). There, the Court fashioned a circumstance-specific approach for determining whether a particular crime of fraud or deceit caused losses greater than $10,000. See id. at 36-38. The Court started with the premise that the INA's monetary threshold could be crossed even if a particular crime did not require a loss of $10,000 or more as an

---

[5] In contrast, larceny is not considered a crime of fraud or deceit. See De Vega v. Gonzales, 503 F.3d 45, 49-50 (1st Cir. 2007). That is presumably why the appellant made so determined an effort to allocate a substantial portion of the loss to the larceny charge.

element of the offense.  See id. at 38-40.  "Rather, the monetary threshold applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion."  Id. at 40.  Thus, a court tasked with assessing the amount of loss must consider not only findings of fact made by juries and judges but also other facts in the record.  See id.

Employing Nijhawan's circumstance-specific approach, it is luminously clear that Harvard Pilgrim's loss was greater than $10,000.  After all, only a single false claim was honored — and that claim, on its face, was for more than $10,000.  Moreover, the record shows, without any hint of contradiction, that Harvard Pilgrim paid the appellant $11,965 in satisfaction of that fraudulent claim for reimbursement.  In addition, the record shows that Harvard Pilgrim later paid around $8,000 to investigate the appellant's fraudulent claims.  To cap matters, the appellant admitted to essentially these facts when he entered his guilty plea, and he indicated a willingness at that time to pay a full $20,000 in restitution.

Given this historical record, we cannot fault USCIS's determination that the appellant's false health care claim caused more than $10,000 in losses.  Indeed, the totality of the relevant circumstances admits of no other reasonable conclusion.

The appellant protests this circumstance-specific approach and labors to distinguish Nijhawan.  His case is

distinguishable, he submits, because the BMC's 2014 Order found a specific amount of loss.  In his view, the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, and its implementing statute, 28 U.S.C. § 1738, demand that USCIS ignore the other circumstances and give dispositive weight to the BMC's statement.

The appellant cites no authority — and we are aware of none — for the proposition that the Full Faith and Credit Clause compels a federal court (or a federal agency, for that matter) to give non-essential findings of fact in state court proceedings conclusive weight.[6]  We reject that ambitious proposition and hold that the 2014 Order is but one circumstance to be considered in the circumstance-specific analysis that Nijhawan requires.

The appellant gains no traction through his reliance on our decision in Rodriguez v. INS, 204 F.3d 25 (1st Cir. 2000).  In Rodriguez, we upheld a decision of the Board of Immigration Appeals (the BIA) ordering an alien's removal due to marriage fraud.  See id. at 26.  The BIA had relied, inter alia, on a state court's annulment of the alien's marriage based on a finding of fraudulent intent to evade the immigration laws.  See id. at 28.  In denying the alien's petition for review, we observed that the state court's

---

[6] Of course, the situation might be different if the federal government had been a party to the state court proceedings such that principles of claim preclusion or issue preclusion applied. See, e.g., R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182-83 (1st Cir. 2006).  Those principles are inapposite here.

judgment terminating the alien's marriage was entitled to full faith and credit and that the finding within it (that the alien had engaged in marriage fraud) was a "presumption plus." See id. We were careful, however, to note that the factual finding was not entitled to dispositive weight. See id. The same is true here.

Nor does the inclusion of the 2014 Order in the mix of relevant circumstances tip the decisional scales. The BMC entered the 2014 Order years after the crime was committed, years after the appellant pled guilty, years after the nine-month continued-without-a-finding period had elapsed, years after the appellant had paid the full restitution amount, and years after the criminal case had been dismissed. There was no longer anything at stake in the criminal case, and the BMC's statements about amount of loss were not essential to either its judgment of conviction or any outstanding restitution order. Rather — in the appellant's own words — those statements were "purely administrative." We reject the notion that non-essential statements of fact in an order issued years after a defendant's sentence has been imposed and carried out are entitled to dispositive weight in the Nijhawan circumstance-specific calculus.

If more were needed — and we doubt that it is — the case at hand fits neatly alongside our opinion in Conteh v. Gonzales, 461 F.3d 45 (1st Cir. 2006). There, we stated that "when a restitution award has been artificially manipulated for the sole

purpose of influencing an alien's immigration status, that award is not controlling with respect to the amount of loss." Id. at 61-62. The record here shows unmistakably that the appellant filed the series of post-conviction motions solely to (in his lawyer's words) "allow him to pursue his desire to become a U.S. citizen." These motions were filed years after his criminal case was closed and his restitution obligation satisfied. The BMC's further orders were useful to the appellant (if at all) only insofar as they might affect his immigration status. To deny that these maneuverings were anything but artificial manipulations of his restitution record would be to blink reality.

We summarize succinctly. Our review of the record convinces us that USCIS properly undertook a circumstance-specific analysis and, in the course of that analysis, appropriately discounted the appellant's attempts at revisionist history. We discern no error: giving dispositive weight to nunc pro tunc orders entered by state courts years after the fact — orders that do not fairly address the issues in the state case — would afford state courts carte blanche to shield defendants from federal immigration laws with the stroke of a pen. That is not the law. Cf. Fierro v. Reno, 217 F.3d 1, 6 (1st Cir. 2000) (noting that "Congress' rules for naturalization must be applied as they are written, and a state court has no more power to modify them on equitable grounds than does a federal court or agency").

## III.  CONCLUSION

We need go no further.[7]  In the case at hand, the record compels the conclusion that the appellant's fraud-and-deceit crime caused a loss to the victim of more than $10,000.  It follows inexorably that both USCIS's denial of naturalization and the district court's approval of that denial are impervious to the appellant's attack.

**Affirmed.**

---

[7] Throughout, the appellant, supported by the amici, has suggested that reliance on the original record of his conviction is especially problematic because he received ineffective assistance of counsel in the plea-bargaining process.  See, e.g., Padilla, 559 U.S. at 366-69.  But the BMC has already addressed this claim head-on and found it wanting.  The appellant chose not to appeal the BMC's decision.  Consequently, the Padilla question cannot be revisited here.  See Gouveia v. INS, 980 F.2d 814, 817 (1st Cir. 1992) ("Criminal convictions cannot be collaterally attacked during immigration proceedings.").